# Preston v. Preston.

(Decided January 29, 1929.)

WHEELER & WHEELER for appellant.

FRED HOWES for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

Appellant and appellee were married in 1920. They lived in Johnson county for a while, where appellee worked for the Chesapeake & Ohio Railway Company in its freight office. He is a World War veteran and received injuries while in the service. The government gave him an opportunity to take vocational training, which required him to move to Louisville. This he did in 1921, taking his wife and their infant boy, who at the time was only a few months old. They remained in Louisville a few months, when they returned to Johnson county. Appellee was assigned to work in a drug store, but later was directed to go to Ashland, where he should work in a drug store located there, which work was a part of his vocational training. There had been some disagreement between them before they went to Louisville and while they were there. Appellant claimed that appellee had been very abusive to her; that he had actually used violence towards her, physical force in his abuse of her. She also claimed that he was boastful about his conquests of other women, and, if the evidence is to be believed, he sought to leave the impression on his wife that he was a dashing figure where the opposite sex was concerned. On the other hand, he claimed that appellant was high tempered, and that she was inclined to want to boss him. At all events they did not get along well, and had not prior to the time when he was to go to Ashland to further pursue his vocational training by there enter-

ing a drug store. On the night before he was to leave, they went to the home of her father and mother. He claims that he had about $70, which was to pay his expenses over to Ashland and to defray his expenses while there until he could receive another check from the government. While he slept, so he says, his wife invaded the sacred precincts of his trousers pockets and extracted therefrom all the money that he had, except a $10 bill, which was not sufficient to defray his expenses to Ashland and provide him food and shelter until he could receive additional compensation. She does not deny the extraction of the money from pockets, but she says it was only $25. This was hard on him, so he says, and he had to defer his trip to Ashland until he could go to Paintsville and find a friend who would loan him money. He borrowed $72.50 for 30 days and paid $12.50 for the use of it. Naturally he was somewhat incensed about this matter, but he went on to Ashland, and there he rented a small apartment and sent for his wife to come to Ashland. She denies that he had rented any apartment so far as she was ever advised, but admits that she went to Ashland, and does not give any very good reason why she did not remain. She returned to the home of her parents and there remained for some weeks. She received a post card from her husband which did not please her. She was advised that he was going to Canada, but this was not what annoyed her. There was a sentence on the post card to the effect that there was a wife somewhere who had a husband and knew where he was all the time because he was paralyzed. This was doubtless intended by appellee as a humorous expression which had struck his fancy, but his wife seemed to read into it that if she wanted a husband whose whereabouts she could be sure of at all times it would be well for her to get one who was paralyzed.

Nothing more was heard from appellee by appellant until about Christmas, when he wrote her a letter affectionate in its nature and husband-like in its expressions. He did not come home, and he did not provide for his wife and child. Appellant wrote to him at one time that the baby was ill, and needed money. His reply was if she needed money she was in hard luck, as she could not get any until he received his next check from the government.

A few months later appellant instituted suit against the appellee seeking a divorce, and also alimony for her-

self and maintenance for the child. The ground alleged was cruel and inhuman treatment. Appellee was proceeded against as a nonresident, but before judgment was entered he appeared and filed an answer and much proof was taken by both parties. The court granted appellant a divorce and also awarded her alimony at the rate of $25 a month, and maintenance for the child at the rate of $10 a month.

Appellee appears to have taken care of the maintenance of the child in accordance with the judgment, although the record is not very clear on this point. He did not pay his wife any part of the award which was made to her, and when it had accumulated and he was owing $250 she instituted suit against him and attached his wages. He came into court and appears to have executed a supersedeas bond in the original action, and the attachment was discharged by an order of the circuit court. He then entered a motion to have the judgment allowing alimony modified to the extent that he should not be required to pay any alimony towards the support of appellant, and that it be further modified to the extent of awarding him the custody of their child. A great amount of proof was taken which we deem it unnecessary to analyze to any great extent. It was made to appear that appellee married soon after the divorce was granted to appellant, and that he had two children by his last wife. He establishes, by his evidence, that he is a citizen of good reputation, and a fit person to have the custody of his son. It is true that he became involved in a rather disgraceful affair with a woman of his acquaintance, but that was a few years ago, and the chancellor found he had reformed, and that he was doing much better than he used to. He has work which yields him wages sufficient to care for his wife and their two children, and to take care of the child by appellant. He attempts to show, by his evidence, that he is in better position to care for the child than appellant, but we are not willing to admit that such is the case. He attempted to make some attack on the conduct of his wife in the testimony which he offered, and this is to his discredit, as he was unable to produce any evidence which in any way reflected on her.

The evidence produced by appellant shows that soon after she was divorced from appellee, and upon his failure to respond in alimony, she was forced to seek employment to support herself and to aid in supporting her

child. Her parents appear to be good people living near Offutt in Johnson county. She left the child with them and took a position with a wholesale grocery concern in Pikeville, where she worked until she obtained a position with the Chesapeake & Ohio Railroad Company at Logan, W. Va. She worked there some years, and the testimony of those who employed her and with whom she worked shows that she was a faithful and efficient employe. She visited the home of her parents to see her child as often as circumstances would permit. After working some years in Logan, she obtained a position in Cincinnati, where she was employed at the time the judgment was entered in this case. She has continued to visit the child as often as she could, and there is no line of proof in the record which shows, or tends to show, that she has in any way neglected him. Moreover, her testimony in this case convinces us that she is a woman of intelligence, refinement, and high character. Her successful efforts to obtain clean employment that would yield an income sufficient to support her and her child, and the esteem in which she is held by those who have employed her, and those with whom she works, are proof of these facts.

It appears in the record, from a statement made by her, that she is not seeking alimony for herself, but that she is asking to retain the custody and control of her child, and that appellee be required to contribute towards his support. The child is with his grandparents, and nothing appears in the record to show that he is not properly cared for in every way. He is now about five years of age, or probably a little older. Every case of this character must stand alone, and the circumstances surrounding the parties and the facts disclosed must all be considered for the purpose of reaching a conclusion as to what is for the best interest of the child. Such cases are always difficult, and while it may be the general rule that the father should have the custody of the child if he is a fit person because it is his duty to maintain it, yet that rule is not without its exceptions. If the mother is better fitted to bring up the child than the father, the mere fact that he is the one who should support it should not outweigh the claims of the mother when she has proven her ability to do the things which are necessary to bring up the child in a way entirely satisfactory.

The judgment of the chancellor was that appellant should recover nothing in the way of alimony from the

appellee. This judgment, depriving her of that which the law awards her, probably could not be justified under strict legal rules; but appellant is not complaining so much about that as she is about the part of the judgment which takes from her the custody of her child and disallows her claim for maintenance. It is true the chancellor, by his judgment, did not immediately take the child from the custody of the grandparents, but the judgment awards the custody to the appellee, and does not require him to pay anything towards the maintenance of the child. The facts in this record show that he cannot pay much, and probably to require him to pay maintenance and alimony both would defeat the very purpose intended to be accomplished. Since appellant appears to have waived any claim for alimony, we are willing to allow the judgment of the chancellor on that point to remain as it is, although we are doing so solely on the ground that appellant has disclaimed her intention to recover alimony, notwithstanding that was the purpose of the last suit which she filed against appellee. We have reached the conclusion that the chancellor was in error in awarding the custody of the child to appellee, and that he should be left in the custody of his mother. We have also reached the conclusion that appellee should contribute towards the support of the child, and for the present the amount should be fixed at $10 a month. The chancellor at all times has control of his judgment, and if the appellee should become able to pay a greater sum, and as the needs of the child increase, he can regulate the amount which should be paid. It is also with the chancellor, upon a proper showing, to modify his judgment touching the custody of the child. As long as the facts are substantially as they appear in this record, appellant should be allowed to retain the custody of the child. Therefore, so much of the judgment as disallowed appellant's claim for alimony is affirmed, but so much of the judgment as awarded the custody of the child to appellee and failed to direct appellee to make any contribution towards the support of the child is reversed.

Judgment affirmed in part and reversed in part, and the cause remanded for proceedings consistent with this opinion.