## Partin v. Partin.

(Decided Nov. 12, 1937.)

R. S. ROSE for appellant.

L. O. SILER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from the judgment of the Whitley circuit court.

The appellant, Mary Partin, and the appellee, Alonzo Partin, were married in Whitley county, Ky., on March 16, 1924, and continued to live together, for the most part unhappily, it appears, until August 12, 1934, when their differences became so acute they separated, the wife remaining in possession of the husband's home and retaining the custody of their children. The defendant, a "shell-shocked" World War veteran, when nervous and distraught and practically driven from his home, took up his living quarters in an upstairs room he rented in a store building in the nearby town of Williamsburg, where he earned a small monthly wage as a mechanic.

Further it appears that during this period of separation—which was not their first—the husband's committee (appointed for him in 1927, upon his being adjudged of unsound mind) provided for the maintenance and support of the wife and children, who were living in defendant's home, by furnishing them with needed food supplies and groceries, amounting to some $40 to $50 a month, which supplies were paid for by the husband's committee out of the monthly pension, amounting to about $100 a month, which had been awarded him for disabilities incurred in World War service.

Also, it appears that this home, the sole use and enjoyment of which had been retained by the wife throughout this period of their separation, was the property of the husband, he having purchased it out of his pension allowance at a cost of some $2,500.

Notwithstanding the maintenance and support of the wife and children was, during this period, provided by the appellee, she none the less, on January 11, 1935, filed this suit, seeking an absolute divorce from the appellee on the grounds alleged, of cruel and inhuman treatment, and that he had, without any or like fault on her part, within the last 12 months, habitually consorted and lived in adultery with one Mary Lizz Slavery, charged to be a lewd and lascivious woman. Further it was set out that there had been born to plaintiff and defendant seven children as the issue of their marriage, only one of whom, the oldest, had died, the names and ages of those surviving being as follows: Leory Partin, 8 years; Dennie Earl Partin, 6 years; Vennie Marie Partin, 5 years; Perry Willis Partin, 3 years; Roda Ellan Partin, 2 years; and John Samuel Partin, 5 months.

An allowance of alimony of $50 a month (later raised to $75) was asked for the support of herself and three of her children, two girls and baby, whose custody she asked to be awarded her.

The defendant by his answer specifically denied all the allegations of the petition and by counterclaim asked that he be granted a divorce, alleging as grounds therefor that his wife had, during the last five years of their married life, herself been guilty of repeated instances of marital misconduct with certain named low characters, showing her to be a lewd woman, of such lascivious

and wanton character as rendered her unfit to have the custody and rearing of their young children, while he, in his character and living, was a proper and fitting parent to be awarded and intrusted with their custody and proper care.

Further he alleged that, due to his highly nervous and disabled condition, both mental and physical, caused by "shell-shock" suffered during his World War service, he was unable, because of the turmoil and disturbing conditions marring a long-endured domestic life of acrimony and discord with the appellant, to live in his home, and asked that it be restored to him and that the custody of his children be granted him, to the end that he might there live with them in peace and quiet.

To such end, he asked that the appellant be ordered to vacate the home and surrender its possession, that he be given the custody of his children, and that he be further granted, upon the grounds stated, an absolute divorce from plaintiff.

Voluminous proof was taken upon these issues by the parties, when, upon submission of the cause for judgment upon them, the chancellor decreed that the plaintiff was not entitled to any of the relief sought in her petition, except to the extent of allowing her the temporary custody of the two youngest of their children, Roda Ellan and John Samuel Partin, because of their extremely tender age, with an allowance of $20 a month to be made and paid her by the husband's committee for their maintenance and support. The chancellor further decreed that in all other respects her petition be dismissed, that the appellee recover upon his counterclaim, and the evidence adduced in support thereof, an absolute divorce from plaintiff, and that, although the defendant had been adjudged incompetent to manage his estate, the evidence yet showed that he was not insane within the meaning of the law, having never been committed to an asylum, and that his grounds presented for divorce were legal and obtainable. The court having further found from the evidence the appellee to be a proper person to have the care and rearing of their four older children, Leory, Dennie Earl, Vennie Marie, and Perry Willis Partin, it awarded their custody to the defendant and his committee, with the privilege given each of the parties to the suit of seeing the children whose custody was awarded to the

other at such reasonable times and places as would not interfere with their proper education and care; that the defendant's home and premises be by the plaintiff vacated and restored to him; and that each party should restore to the other all property obtained by reason of or in consideration of their marriage.

The plaintiff has appealed, bitterly assailing the provisions of this decree as improperly harsh and indifferent to her rights, and contending that the chancellor's findings of fact, upon which based, are not supported by the evidence.

While this court is, under section 950-1, Kentucky Statutes, expressly forbidden to reverse a judgment granting a divorce, it is yet authorized to review the judgment of the circuit court in a divorce suit in other respects, that is, those relating to its provisions in giving or refusing of alimony and its award made as to the custody of the parties' children.

The rule as to what is a proper exercise of its revisory power as to such matters has been thus declared:

> "Under the common law, generally, the father was entitled to the custody of his infant child; but the more modern doctrine requires the chancellor to look to the happiness, welfare, and comfort of the child, and to confide its keeping to that parent whose ability, time, and attention can best be devoted to its care and welfare."

Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243, 244.

Or again, as this guiding and controlling principle was re-enunciated in the later case of Burke v. Burke, 267 Ky. 734, 103 S. W. (2d) 291:

> "This court has repeatedly stated that the welfare of the children will control in matters of this character. The wishes of the parents are secondary. Ordinarily, where the parents are divorced, the custody of children of tender years, particularly if they are girls, will be awarded to the mother upon the ground that their welfare will be best served by receiving her affectionate care and attention. This rule, however, is not inflexible. There are circumstances under which the best interests of the children will be served by giving their custody to the father, though the mother is morally a

fit person for the trust. The question must be determined by the facts of the particular case.''

Further, section 2123, Kentucky Statutes, expressly provides that, in making orders for the care, custody, and maintenance of minor children of divorced persons, the court shall, in all cases, have the interest and welfare of the children principally in view.

"The parents should, in all cases, recognize the fact that the statute subordinates their interest in their child to the child's interest and welfare.'' Shehan v. Shehan Case, supra.

Even had we first entertained doubt as to the propriety of the court's decree in thus awarding the custody of the children between the parents, such doubt was very effectually removed by later proof introduced and heard upon defendant's motion to redocket the case and for a modification of even that provision of the decree giving to his wife only the temporary custody of the two youngest children and to discontinue the monthly allowance made her for their support and maintenance of $20, in that it was made to conclusively appear by the supporting affidavits of numerous creditable witnesses that, since the court's decree of a divorce to defendant, the appellant had continued to live the life of a wanton and though yet an unmarried woman' she was then in an advanced state of pregnancy, due to her continued consortium and sexual indulgence with some one or more of the named local Lotharios the defendant had previously testified in the divorce action the plaintiff was then having adulterous intimacy with, and of which accusation she had confessed her guilt to him.

The court, upon such condition of affairs being brought to its attention, convincingly showing the plaintiff to be a loose and unchaste woman, altogether unfitting her to have the custody and rearing of children of tender years, modified its decree, as moved for, by withdrawing from her custody the two children previously awarded her and discontinuing altogether the payment to her of any monthly allowance, the court awarding them to their father, who it was further shown had remarried and was then maintaining a good and decent home into which to receive and rear them.

We are not inclined, in the light of this uncontradicted showing made, to question the propriety of the

chancellor's finding, and decree based thereon, that the interests and welfare of the children would be best served and realized by the decree as made and modified.

A careful review and consideration of the whole record, wherein is clearly shown the wreck and ruin of this home and family, brought about through the lustful lewdness of this errant and faithless woman, forbids our reaching any conclusion other than that the chancellor's finding and decree was altogether warranted and proper.

We do not deem it needful, or as serving any helpful purpose, to enter upon a detailed narration of the many instances of the appellant's delinquency and immorality violative of her marriage obligations, nor the recriminatory testimony given by appellant and her father in counter accusation of the defendant's claimed intimate romancing with one Mary Lizz Slavery, while employed in his home as a nurse for his wife, which are by each of the parties in turn stoutly denied. The chancellor has found from this conflicting evidence that it failed to show the defendant guilty of participation in the charged wrongdoing, but finds it ample to establish plaintiff's guilt of such misconduct as denies her the right to have a divorce granted her or to an allowance of alimony, generally awarded as incidental thereto.

While it is a well-established rule that, where there is no marital delinquency on the wife's part, even though she may not be entitled under the evidence to a divorce, it is yet sufficient ground for an allowance of alimony to her that the husband, being the support of the family, was a substantial participant in the shortcomings of their marital life which led to their separation. Green v. Green, 152 Ky. 486, 153 S. W. 775.

However, here the plaintiff's conduct has been found not free from moral delinquency, but such as brands her a recreant and unfaithful wife to the defendant, effective to forfeit rather than bring her claim for alimony within the measure of the rule announced.

Compare further the cases of Asbury v. Asbury, 221 Ky. 744, 299 S. W. 723; Yeager v. Yeager, 197 Ky. 353, 247 S. W. 5; Wiggins v. Wiggins, 268 Ky. 352, 104 S. W. (2d) 1097; Duff v. Duff, 268 Ky. 343, 104 S. W. (2d) 1095.

It is therefore our conclusion, after a careful con-

sideration of the entire record, that the chancellor's decree as here made and later modified, as stated supra, comes clearly within the meaning and recognized deemed here applicable principle of the rules above announced, and therefore it should be, and it is, affirmed.