MARTHA S. ARMOUR, complainant-appellant, respondent on cross-appeal,

*v.*

BERNARD R. ARMOUR, defendant-respondent, appellant on cross-appeal.

[Argued February 7th, 1944.   Decided April 20th, 1944.]

*Messrs. Lum, Fairlie & Wachenfeld* (*Mr. Saul J. Zucker* and *Mr. Robert D. Steepel,* of the New York bar, of counsel), for the complainant-appellant and respondent on cross-appeal.

*Mr. Charles Hershenstein* (*Mr. Richard J. Filz Maurice,* of counsel), for the defendant-respondent and appellant on cross-appeal.

The opinion of the court was delivered by

PORTER, J.

This appeal and cross-appeal are from a decree in Chancery in a suit for separate maintenance and for the custody of infant children of the parties. The learned Advisory Master concluded after a careful consideration of rather voluminous testimony that the complainant was justified in living separately from her husband and was entitled to proper maintenance by him. He also concluded that the custody of the children should be awarded to the father with right of reasonable visitation by the mother. With those conclusions we are in accord. The decree also awards counsel fees to the complainant.

Complainant's appeal is from the awarding of the custody of the children to the father and from the amount of counsel fees and maintenance allowed her. Respondent's cross-appeal is from the decree for separate maintenance. Both appeals were argued together, and will be considered together.

This couple were married February 9th, 1931. He is a successful business man with large interests under his control

and management from which he receives an income of over $220,000 annually. Within the first five years of the marriage four children were born. The eldest, an only son, died during the course of this litigation. The remaining children are now about eleven, nine and seven years of age, respectively. The domestic life of this couple turned out to be a stormy one. Frequent quarrels and disagreements began within a few months after marriage and continued while they lived together. As a result the husband absented himself from the home on several occasions for various periods of time. These unhappy conditions seem to have reached a climax in February, 1937, when the husband alleges that his wife was absent from the home over night without his knowledge and under circumstances which aroused his suspicions of her faithfulness. Her explanations and equivocations concerning the episode did not satisfy his doubts. No proofs of her unfaithfulness were offered, nor indeed does the husband now make any such accusation. From that time the estrangement seems to have become intensified. In April, 1940, while the parties were still living together, the wife sued her husband for separate maintenance charging extreme cruelty and abandonment. In May, 1940, a separation agreement was entered into after many conferences of the parties and of their counsel, and the action for separate maintenance was discontinued. Under the terms of this agreement the wife was to live separately, to have custody of the children and to receive from her husband for the support and maintenance of herself and children $18,600 per annum, and in addition certain other sums for medical and educational expenses. This agreement was most carefully and thoughtfully prepared in view of the entire situation and what seemed for the best interests of all concerned. Nevertheless, it soon proved unsatisfactory or unworkable, and each of the parties accused the other of violations of its terms. As a result, in March, 1941, the wife instituted another action in Chancery praying for the specific performance of the separation agreement. An answer was filed which raised the question of the court's jurisdiction to decree specific performance of such an agreement. A motion

to strike the answer was denied by the court and on appeal was affirmed by this court. *131 N. J. Eq. 110.* The wife then moved in the Court of Chancery to amend her bill of complaint in order to set up a cause of action by charging the husband with abandonment and for *pendente lite* relief. This amendment was allowed, but on appeal this court reversed on the ground that the original bill had in effect been disposed of and should have been dismissed; it was not susceptible of amendment setting up a new cause of action. *132 N. J. Eq. 298.* During the pendency of that appeal the husband petitioned the Court of Chancery for modification of the order allowing him visitation of his children. This proceeding seems to have been occasioned by a dispute between the parents as to where the children were to spend their summer vacations. Advisory Master Herr, to whom the matter was referred, advised an order favorable to the plans of the mother in that regard and expressed his opinion that "the interests of these children will best be served by their remaining in their mother's custody and under her maternal domination." It will be observed, however, that the custody of the children was not the real issue in that proceeding. In any event the conclusions of the Advisory Master can have no bearing on that question in this proceeding because the proofs here are not those presented in that case. In October, 1942, after this court reversed the order of Chancery in permitting an amendment to the bill for specific performance of the separation agreement, the instant suit was brought. So much for the history of the litigation between this couple.

### 1.

Our first and foremost consideration is given to the custody of these children. Certain testimony was given at the hearing by a former governess and the chauffeur's wife, who sometimes helped with the children, which information had not previously been disclosed to the husband or his counsel. This testimony had a bearing upon the fitness of the mother to have custody of the children. If true, it tended to show

knowledge of sex relations imparted to or acquired by these children far beyond the knowledge or information which is normally possessed by children of their ages. It is especially pertinent when coupled with the undisputed fact that the mother read to the children a book concerning sex, having to do with the birth of children. The age of these children at that time ranged from about three to six years. Both the governess and a maid refused to read this book to the children at the mother's request, whereupon she stated that she would do so herself. It is not disputed that the mother had a fondness for pictures of nude people of which she had a collection. She insisted on keeping them against her husband's strong aversion and objection. She also had several books on sex, one of which advocated sex freedom, a change in the law to the effect that adultery should not be a ground for divorce and the permitting of obscene publications. The respondent charges that when he remonstrated with his wife for her approval and adherence to the philosophy of the writer of this book and for having the pictures and other sex books, she chided him for being old fashioned and mid-Victorian. He says that she invited him to read the book and that she repeatedly demanded that he agree to give her sex freedom to the end that he could have a mistress and she a lover. Appellant denies that she made any such demand or suggestion or that she agreed with the philosophy of the book mentioned. She also denies having possessed obscene books described by him.

Doubtless, neither parent is wanting in affection for these children, and of course they both desire to do whatever is best for them. Their views, however, in this particular are quite disparate. The statute *R. S. 9:2–4* gives both parents equal rights to their custody and makes the criterion of the award the best interests of the children. It is indeed difficult for us to evaluate the testimony on so delicate a matter from a mere reading of it. The trial judge, who saw the witnesses and observed their manner and conduct while testifying, was in a much better position to arrive at sound conclusions on this important element of the case. The question for our

determination is whether the conclusions of the learned Advisory Master, that the custody of these children should be taken from the mother and awarded to the father, are justified by the proofs. We believe that the testimony and proper inferences drawn therefrom fully support his finding that the best interests of these children, from all the facts and circumstances, are served by continuing them in the custody of their father.

## 2.

Next to be considered is the question of the right of the wife to separate maintenance and if so, the adequacy of the amount allowed. It is argued by the husband on his cross-appeal that the wife failed to prove that he had (a) without justifiable cause abandoned her or separated himself from her and (b) that he had refused or neglected to maintain and provide for her. The contention is that both of these elements must be established before she may have a decree for separate maintenance under *R. S. 2:50–39.* The learned Advisory Master found as a fact that the husband did not physically abandon her; that he was not guilty of extreme cruelty toward her; that he did not drive her from the home nor neglect or refuse to support her. Nevertheless, he found that the wife was entitled to separate maintenance because the husband had agreed to the separation. With that conclusion we are in accord. This court held in *Richman* v. *Richman, 129 N. J. Eq. 114,* that the statute concerning separate maintenance, *R. S. 2:50–39, supra,* was intended to afford a direct remedy to a wife living apart from her husband with his consent or acquiescence. We think that case is controlling and dispositive of that phase of this case.

The husband argues that he was opposed to his wife living separately from him and that he finally agreed because of her insistence and under circumstances which left him no alternative. He says that this agreement puts his real position in a false light under the facts and circumstances and that we should look through and behind it in determining whether he did in fact consent to the separation. We think

this contention is without merit. Even though the wife was insisting on a written agreement of separation and assuming his reluctance at that time to accede to her request, nonetheless he did sign the agreement after mature deliberation. He has not since repudiated the scheme of their living apart. In fact he refused to follow the suggestion made to him by the Advisory Master at the trial that he withdraw his consent to the separation. He cannot now be heard to say under all the circumstances that his entering into the agreement was not done in good faith.

The decree appealed from provides that the husband pay the wife for her maintenance the sum of $5,700 annually. She is also receiving the sum of $1,500 each year from a trust fund created by her husband for her benefit. The wife appeals from the decree in this respect on the theory that the amount is entirely inadequate and disproportionate to the scale of living to which the parties were accustomed and to his income. She clearly is entitled to a sufficient allowance to enable her to live according to the scale to which she was accustomed with proper regard to his means. Under the terms of the settlement agreement she established, with his consent, a home for herself and her children according to the scale of living agreed to. His agreement under those conditions was to allow her for the maintenance of herself and children the sum of $18,600 free of taxes, plus necessary medical and educational expenses. Of this sum $12,250 was necessary for the maintenance of the household.

We conclude that the Advisory Master erred in advising the amount awarded by the decree, it being inadequate under the testimony. The amount awarded, $5,700 in addition to the income from the trust fund of $1,500 seems to us insufficient for her maintenance and quite out of proportion to the agreed sum of $18,600 she was to have for herself and children. Consideration must also be given to federal income taxes which will accrue on the sum awarded her. Under the proofs we think that a proper allowance for her maintenance is the sum of $10,000 exclusive of the proceeds from the said trust fund.

### 3.

The remaining question for determination is the adequacy of counsel fees allowed the wife. She was allowed $1,500 *pendente lite* and $5,000 at the close of the case. The wife appeals from the decree in that respect. She argues that the Advisory Master, in advising the amount, disregarded the services in the custody issue. That may be and would account for what seems to us an insufficient allowance. All of the services of counsel should have been considered. The case was bitterly contested throughout and thoroughly tried by capable counsel on both sides. The amount awarded the wife for counsel fees is below our evaluation of the services rendered to her. We conclude that the allowance should have been $10,000 instead of $5,000 in addition to the $1,500 awarded *pendente lite*.

The cause is remanded to the Court of Chancery for modification of the decree in accordance with the views herein expressed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, HEHER, PORTER, DEAR, RAFFERTY, HAGUE, THOMPSON, JJ. 9.

*\*For reversal*—BODINE, DONGES, PERSKIE, COLIE, WELLS, DILL, JJ. 6.

Allowance of alimony—

*For affirmance*—None.

*For modification*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.

Allowance of counsel fee—

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, HEHER, DEAR, JJ. 5.

*For modification*—BODINE, DONGES, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 10.

* The minority opinion appears at page 104, *post*.