# Merrell v. Merrell et al.

May 3, 1946.

L. B. Weir for appellant.

E. M. Nichols for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The case concerns the custody of a child of divorced parents. As said in Cummins v. Bird, 230 Ky. 296, 19 S. W. 2d 959, 962: "Great responsibilities and duties must be met and performed by the courts, and none of them are more delicate or difficult than the determination of questions respecting the custody of children."

The numerous divorces and legal contests over cus-

tody of children of broken homes constitute a sad commentary on social conditions of our generation. This case reveals also the unfortunate provisions of our statute authorizing the marriage of children. KRS 402.020.

On April 10, 1937, James P. Merrell, then sixteen years old, married Geneva Duncan, then fifteen. When they separated in June, 1939, they had a child six months old. The mother and baby went to the home of her parents, Tom and Mary Duncan. On May 31, 1941, the wife was granted a divorce and the court approved an agreement made at the time of the separation that she should have the custody of the child and he should pay $4 a month for his maintenance. During the next three years many compulsory processes were issued against the father for his failure to make payments. During this period the child was with his mother's parents and she worked in Evansville. Later she married and has lived in St. Louis. More recently the father has quite regularly made remittance of the monthly allowance to his child's grandparents pursuant to a bond he was required to execute. The case was reopened by the father seeking custody of his child. The mother responded with the same prayer and a motion for an increase in the allowance. The grandparents filed an intervening petition seeking the child's custody and control. On May 31, 1945, judgment was entered awarding the permanent care, custody and control of the child, who was then six and a half years old, to the grandparents, and ordering the father to pay them $10 a month for his maintenance. The father appeals and asks that we award him the custody and relieve him from the payment of maintenance. They and the mother cross-appeal and ask that the allowance be increased to $20 a month.

The appellant argues that the judgment of divorce forming the basis of the award of the custody of the child was erroneous because he was then a minor and no guardian ad litem was appointed to defend the suit for him. The judgment may have been erroneous on this account (Herr v. Humphrey, 258 Ky. 270, 79 S. W. 2d 956), but the question is irrelevant because that judgment became final and binding long ago and because the matter of custody was opened up in due course thereafter.

No process issued against the appellant on the in-

tervening petition of the grandparents and appellant maintains that the judugment rendered thereon is void. This proposition of law is likewise sound. But it goes from under the question by the disclosure in the record that the appellant waived the omission of being served with process by objecting to the intervening petition being filed and by entering into a contest on the issues raised by it. More than that, the proceeding was on his own pleading seeking the custody of his child.

We are concerned, therefore, only with the questions of the propriety of the judgment of 1945 awarding custody of the child to the grandparents and the maintenance allowance.

In these cases, which are of such delicacy since the courts are dealing with the most precious possessions of any man and woman—young children of their own flesh and blood—and which are of such responsibility since the decisions form the molds of the children's lives and destiny, the pole star always before the court is the welfare of the child, present and future.

The mother is ordinarily endowed by nature with superior qualities for caring for and training a young child, although the love of a father may be as great. Up to the time this case was reopened, these parents were content to have the little boy cared for by his grandparents, whose home was likewise the home of his mother. When she was at work elsewhere she made frequent visits and faithfully looked after her child. Since her re-marriage she has remitted $20 a month to her parents out of the allowance received from her husband, a soldier. It may well be said that the care and custody by her parents was her own. They have reared eleven children, including two boys, twelve and fifteen years old, who are yet with them. It is conclusively established that this six-year old boy has been receiving the same love and attention as their own children and that the grandparents and his two young uncles are all devoted to him, as he is to them. Many neighbors testified with approval, as to the Christian training and the way in which this child has been cared for. The grandparents are poor, it is true, and live in a four-room house on a tract of 86 acres belonging to one of their sons. It seems that the grandfather receives all the earnings and profits from this little farm and rented land adjoining. The

child's mother testified that if it should be required by the court in order that she might have the custody of her child she would return to Kentucky to live.

The father is now twenty-four years old and has lived 20 miles or more away in a small house on a tract of 83 acres owned by his father, which he cultivates as a share cropper. His cash income has never been over $500 a year. He has not given much consideration to this child, and it would appear the little fellow scarcely knows him. He has gone to see the child only two or three times in six years. He admits that he was always cordially received and well treated. The reason he gives for not having gone more frequently is that he did not own an automobile and would have had to borrow a car, but even then he could not get any gasoline because of war restrictions.

There is nothing in the record that reflects upon the character or moral fitness of either the father or the mother of the child, and his grandparents established a good reputation. The chancellor had the benefit of seeing these people and doubtless is familiar with them and local conditions. He thought it would be to the best interest of the child that the present custody be given the grandparents. We readily concur in that conclusion. While the judgment makes no reference to the right of visitation by the father, he makes no complaint of this in his appeal. As we have said, he testified that he has always been cordially received by the grandparents, although he has felt some embarrassment about going there, since the visits brought up unpleasant memories.

In the matter of allowance of $10 a month, several witnesses testified that it is too little and gave instances of the high cost of children's clothing and special expenses necessary in attendance upon school, in which he will soon be entered. All that may be conceded. But the other side of the picture portrays a father of little earning capacity. It seems to us that $10 a month is not a disproportionate contribution for the care of this child considering the father's obligations to his present wife and their child. A year has now elapsed since the judgment was rendered, and we are of opinion that the record does not authorize a different conclusion from that reached by the chancellor upon the record then made. Of course, upon a showing of changed conditions, both the

questions of custody and allowance may be opened up again.

The judgment is affirmed upon both original and cross-appeals.