## McGary et al. v. Children's Agency.

January 27, 1948.

Lawrence F. Speckman, Judge.

430

W. Clarke Otte and Otte, Shaw & Frazee for appellants.

Andrew Duncan for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Upon petition for writ of habeas corpus against Lillian McGary and her husband, Robert McGary, appellants, the Children's Agency, a charitable organization of Louisville, appellee, obtained judgment for custody of Robert D. Bell, a 3 year old child. The McGarys appeal.

It is contended that the judgment should be reversed because (A) the chancellor did not hear or consider appellants' evidence pertaining to the welfare of this child and therefore did not render judgment on the basis of the child's best interest and because (B) appellee is estopped from claiming any right of custody of this child under the existing circumstances of this case.

In the early part of 1945, Mrs. Lorraine Bell, being separated from her lawful husband and being enceinte with another man's child, turned to The Children's Agency for help in her hour of extremity. The Agency gave her a hand, placed her in a hospital until the birth, on February 27, 1945, of Robert D. Bell, our child in question, then took her and the baby to the McGary home on March 7, 1945, where the child has since remained under a boarding arrangement of contractual basis. The Agency has paid the McGarys a total of $928.34 for board and clothes furnished to this child. The mother remained very briefly at the McGary home with the baby, then left without the baby, finally went to Texas, where she, now divorced from her husband, lives at the present time. On September 20, 1947, having made plans for a permanent adoption in another home, The Agency sought to repossess the child. But the McGarys, then having discovered the child to be en-

shrined with the affections of their own hearts, refused to give it up. On September 29, 1947, these habeas corpus proceedings were begun by The Agency. On September 30, 1947, the McGarys filed a petition for legal adoption and in support filed a duly executed consent of the mother. But on October 4, 1947, the mother revoked her adoption consent of September 30, 1947, and reinvested The Agency with full authority to make its own decision as to permanent placement of the child.

A. It is true, just as appellants contend, that a child custody case presents as its paramount issue the child's best interest and that such an issue should ordinarily transcend the purely legal aspects of any case. See Thomas v. Sprinkle, 299 Ky. 839, 187 S. W. 2d 738; Habeas Corpus, 25 Am. Jur. 204; Merrell v. Merrell, 302 Ky. 219, 194 S. W. 2d 386. However, we see this as a case in which we believe that the chancellor, aside from the naked legal considerations, did reach a decision which may reasonably be calculated to inure in final effect to the best interest of this child. If we accept, just as if firmly proven, this doubtless being the attitude similarly adopted by the chancellor, the unwavering happiness, the staunch morality, the shining righteousness, and the financial stability of the McGary home, yet there are still other questions for serious consideration in a problem of placing the right child in the right foster home. For example, a child who is inclined to love pets and animals would not be well matched to the situation of a home where there is no such inclination. He would be better suited for some other home where there is that same inclination. The Agency is not taking the position that the McGarys, who have another child, a 7 year old boy of their own, are not fit persons to furnish a desirable home for children. It may be admitted, for the purposes of this case, that they and their home are as fit as the proverbial fiddle. Nevertheless, The Agency has selected some other home which is considered to be a little more suitable in some particular way for this specific child. Should The Agency be denied the right to exercise that discretion, especially when the real mother has definitely given it that right? We do not think so. The Agency is engaged in a valuable and unselfish work and is sponsored and directed by some of the outstanding civic leaders of

Louisville. It is a benignant, not a malignant, organization. It is in truth bringing about a practical realization of the psalmist's sacred declaration, "When my father and my mother forsake me, then the Lord will take me up." Could the Chancellor, regardless of proof sustaining the good graces of the McGary home, have denied custody to The Agency, an organization which this record shows is one of unselfish purpose, of scientific approach, of successful results? We do not think so, for to that end, it would have been necessary to indulge the assumption that The Agency is about to commit our present child contrary to welfare and best interest. It would have been necessary to indulge the assumption that The Agency is a malignant instead of a benignant institution. Yet all proof is to the contrary. It looks as if the law question and the welfare question both resolved themselves in favor of The Agency under the actually proven facts as well as under a full measure of assumed merit as to the McGary home. The chancellor reached a similar determination and we believe it to be correct and proper in this case.

B. Appellants also take the position that by reason of appellee's conduct in leading appellants to believe that the child might be left in the McGary home for permanent adoption, The Agency is now estopped from claiming custody. But it must be remembered that in estoppel it is necessary to establish that the one to be estopped, The Agency in this case, has so misled the ones contending for the estoppel, the McGarys in this case, as to induce the latter to do something to their prejudice. Hodge Tobacco Co. v. Sexton, 166 Ky. 219, 179 S. W. 36; Bush v. Chenault's Ex'r, 175 Ky. 598, 194 S. W. 777. It is difficult to see any conduct of The Agency in this case that may have induced the McGarys to do anything to their own prejudice, since they received $928.34 for the expense of a child, which they loved to such an extent that its maintenance must have been somewhat of a pleasure. The fact that The Agency paid and the McGarys received this money strongly refutes the McGarys' contention that they were ever misled as to the nature of this situation, strongly supports the idea that this was a contractual and temporary arrangement made entirely for the benefit of this child. And we might now add that an estoppel must

be pled and we have found no pleading of such a defense in this case. See Lacey v. Layne, 190 Ky. 667, 228 S. W. 1.

While it is no doubt hard for the McGarys to have to face permanent separation from this little child, yet it appears necessary for them to do so, and we think they might do well to adopt the philosophical attitude that "it is better to have loved and lost than never to have loved at all." If we had another bambino, we would give it to them. Perhaps The Agency may feel likewise and in so doing may hereafter find the very one to meet their hearts' desire.

Wherefore, seeing no error in the chancellor's judgment, the same is hereby affirmed.