McKINNEY et al.

v.

McKINNEY et al.

Court of Appeals of Kentucky.

March 26, 1954.

Fritz Krueger, Somerset, for appellants.

Russell Jones, Somerset, for appellees.

SIMS, Chief Justice.

The question for decision is whether the paternal grandparents, or the mother should

have the custody of three children, Charles, Mae and Leroy, whose ages at the time of the hearing were 12, 10 and 8, respectively.

The chancellor in an opinion delivered from the bench immediately after the hearing left the custody of the children with their grandparents, with the privilege of the children visiting their mother at reasonable times. She appealed.

As this is a fact case it will be necessary to review the evidence, but in doing so we will only give its substance and not go into detail. Since the parties have the same surnames, we will refer to them by their given names to save time and space.

Bonnie and Delmos, the parents of the children, separated in 1948. She went to Ohio to work and left the three children with Delmos, who lives in a tenant house on a 60-acre farm in Pulaski County owned by his parents. Delmos' parents helped him to care for these children, who spent most of their time in the home of the grandparents rather than with their father, whose house is some 300 yards from that of his parents. Bonnie visited her children when she could, which was not too often; also, she gave them what clothes and little presents she could afford from her meager earnings as a domestic.

On December 27, 1950, Bonnie obtained an uncontested divorce in Ohio but did not seek the custody of her children as she was unable to support and care for them. The divorce judgment made no disposition of the custody of the children. In April 1951, she married John Rowe, who appears to be a reputable man and is a chef earning $140 a week in Franklin, Ohio, a small town about 30 miles from Cincinnati. Rowe, his 18 year old grandson and Bonnie live in a rented apartment consisting of three bedrooms, a living room and kitchen. Bonnie instituted this habeas corpus proceeding in the Pulaski Circuit Court in October 1953 to obtain custody of her three children.

At the time of the hearing Bonnie was 33 years of age, and her present husband was 64. The age of the grandparents does not appear in the record, nor does the age

of Delmos, but the record shows the latter in April, 1953, married an 18 year old girl and he still lives in the tenant house on his parents' farm.

Rowe testified he was able to care for the children and to educate them and wanted them in his home. The grandparents likewise testified they have become very attached to the children and they are able and wish to continue to educate and care for them. Delmos, also, testified he wanted the children to remain with his parents and would continue to help care for them to the best of his ability. The oldest child testified he wanted to live with both parents, the girl expressed a preference to remain with her grandparents, while the youngest child did not testify.

There was no evidence attacking the reputation of any of these parties or their homes, and all appear to be good, plain people, who live respectable lives.

In this character of case the welfare of the children, present and future, is the controlling consideration followed by courts in determining their custody. Merrell v. Merrell, 302 Ky. 219, 194 S.W.2d 386. Children are usually placed in the custody of natural parents rather than third parties, such as grandparents, in the absence of a showing the parent is unfit to have the custody. KRS 405.020; Whalen v. Boles, 314 Ky. 817, 236 S.W.2d 885. No hard and fast rule can be followed in determining what is to the best interest of the children and each case is determined upon its own peculiar facts and circumstances. Setser v. Caldwell, 300 Ky. 356, 188 S.W.2d 451.

While the rule is not inflexible, children of tender years are ordinarily placed in the custody of their mother. Partin v. Partin, 270 Ky. 596, 110 S.W.2d 298. We have several times written that in determining the custody of children we would give some weight to the wishes of a child 12 years of age. Harms v. Harms, 302 Ky. 60, 193 S.W.2d 407. As above stated, the 12 year old boy expressed the desire to live with both parents, thus we get no aid from

his testimony. The girl, 10 years of age, wants to remain with her grandparents, while the boy of 8 did not testify.

The age and health of the grandparents are not shown in the record, nor are we given any picture of the physical aspects of their home and nothing is said about their financial condition, although the record shows these grandparents have done a good part by these children.

■ We think the welfare of the children will be served best by placing them in the custody of their mother. We say this because a mother, by nature, usually is better prepared to nurture young children and a child who grows up without the loving care of a mother oftentimes is handicapped. Then too, we think the children will have better educational advantages in her present home than in the home of the grandparents.

Cases involving the custody of children are perhaps the most difficult with which the trial courts and this one deal. The rules of law governing them are not intricate, but it is their practical application to the facts in each particular case which give courts so much concern. Judge Tartar's opinion shows he knew how delicate was the situation he had to decide. We realize it is a serious and solemn thing to take these children from their devoted grandparents, but we can look only to the present and future welfare of the children themselves and must brush aside the sympathy we have for the grandparents. When we do this, we feel it is for the best interest of the three children to be reared by their mother.

The children should be allowed to visit their father and grandparents, but there should be no interference with their schooling, hence it will be best for the children to spend each summer on the farm with their grandparents. It will not be long until the school year ends and we do not think it wise to take them out of school now and we will let them remain with their grandparents until the end of the school term. Furthermore, as the children are to spend each summer's vacation with their grandparents, they will not go to their mother until September 1, 1954.

The chancellor will retain this case on the docket and the children will remain under his jurisdiction even though they are put in the custody of their mother. Before the children are taken to Ohio, the chancellor will require the mother to make a bond in the total sum of $1000, with good and solvent surety, that she will comply with all orders of the Pulaski Circuit Court in reference to the children.

The judgment is reversed and one will be entered consistent with this opinion.