Suzanne Rabaud BUTCHER, Appellant
(Plaintiff below),

v.

Clarence Sellers BUTCHER, Appellee
(Defendant below).

No. 2999.

Supreme Court of Wyoming.

Aug. 8, 1961.

Mayne W. Miller and Paul Barber (of Barber & Miller), Casper, for appellant.

Robert R. Rose, Jr., Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

Plaintiff, Suzanne Rabaud Butcher, brought this action for divorce against Clarence Sellers Butcher on July 23, 1959, at Casper, Wyoming. She alleged that plaintiff and defendant were married in Paris, France, on December 25, 1947; that four children were born to this marriage, namely, William Louis, aged 10, Anita Marie, aged 9, Jane Michele, aged 6, and Jacques Yves, aged 5; that plaintiff is a proper person to have custody of the children; that defendant offered such indignities to the plaintiff as to render plaintiff's condition intolerable; and that defendant is fully capable of earning an income sufficient to pay for the support of the plaintiff and the children and to pay plaintiff's attorney's fees in this matter. She asked for an absolute divorce and for the custody of the children.

The defendant filed an answer in the case, admitting the marriage of the parties but denying the allegation as to indignities offered to the plaintiff. As a counterclaim, defendant alleged that the plaintiff had offered such indignities to the defendant as to render his marital condition intolerable and that plaintiff is able to support herself and maintain her own livelihood. He asked for an absolute divorce and that the custody of the minor children be awarded to him with reasonable visitation on the part of the plaintiff. The case was tried to the court in April 1960. At the close of the trial the court granted an absolute divorce to the defendant and awarded the care and custody of the children to him. The court made careful provision as to the care of the children, providing in substance that in addition to reasonable visitation to the children the plaintiff should have care and custody of them during their summer va-

cations. The court also awarded plaintiff attorney's fees of $350 and alimony of $5,000 payable at the rate of $100 a month. From that judgment the plaintiff has appealed to this court. The parties will generally be referred to herein as in the court below. The errors assigned herein are, first, that the court should have allowed the custody of the children to the plaintiff instead of to the defendant and, second, that the court should have granted the divorce to the plaintiff instead of to the defendant.

It appears herein that the plaintiff had been married previously to a musician but was divorced prior to the marriage to the defendant. Plaintiff and defendant, after being married, moved to a farm some twenty miles north of Gillette, Wyoming. They first lived in a small house with no modern conveniences, but additions were made to the house and it was made modern. About two years later they moved into a larger house. This house is modern and has electricity, water, telephone and all modern conveniences. Other facts will be stated herein later.

■ 1. Plaintiff complains that the care and custody of the children were awarded to the defendant in the manner above mentioned and claims that she should have their care and custody. Counsel relies in the main upon the rule that ordinarily the care and custody of young children should be awarded to the mother as held, for instance, in Ramsey v. Ramsey, 76 Wyo. 188, 301 P.2d 377; Douglas v. Sheffner, 79 Wyo. 172, 331 P.2d 840; and Stirrett v. Stirrett, 35 Wyo. 206, 248 P. 1. That rule, however, is not always controlling, as noted hereafter.

■ One of the main factors to be considered herein is the financial and economic condition of the respective parties because of the fact that the children must be fed and clothed. From July 1959 to April 1960 the plaintiff had the custody and care of the children and took care of them well except that the youngest boy, aged 5, was with his father most of the time. The main reason that plaintiff was able to take care of the children in a proper manner during that time was because the court had awarded to her $400 per month to be paid by the defendant and which was paid to her. Defendant paid a number of additional items in support of his children. Plaintiff herself gave piano lessons and earned about $350 a month. That amount was somewhat less during the summer when children were on vacation. Plaintiff bought a house in Casper for some $16,000 without making any down payment. She bought a Buick automobile on which there was due $1,000. She bought a piano at a cost of about $4,000 and a mink coat costing $1,000. She apparently makes installment payments on these various items. Thus it would seem that after making her installment payments there would be very little money left to feed and clothe the children properly, thus inducing her to make continual demands upon the defendant to furnish more and more money. It appears herein that while during some of the years the defendant had a very good income, at the time of the trial his net income was small. The land on which he lives comprises 5,000 acres of deeded land and some land leased from the state. The farm and the buildings are owned by defendant's stepfather, William A. Hensley. Defendant has no interest in the farm. All the income that he has consists of one-half of the increase of livestock furnished by his stepfather. He owed considerable money at the time of the trial. William W. Smith, the banker at Gillette with whom the defendant does business, testified that if the defendant were called upon to pay his debts he, the defendant, would not come out even but would still be owing money to the bank. The stepfather has guaranteed the payment of some $26,000 which the defendant owes and has also signed a note with defendant for an additional $1,000. He testified that he could not lend additional help but, given time and opportunity, defendant might ultimately become solvent. In view of these facts, the trial court had the right to conclude that

the defendant would not be able to support himself and give any great amount of money to the plaintiff for the care and support of the children, probably on the theory that generally it is considerably cheaper to support children on a farm than it is in a city. It is held in Burke v. Burke, 267 Ky. 734, 103 S.W.2d 291, that the custody of children may be awarded to the father when it appears that he will be able to provide a suitable home for them but will not be able to support himself and furnish an allowance to the mother which will enable her to properly take care of the children.

In addition to this it appears herein that the plaintiff is not stable emotionally. She takes tranquilizers continually. She had a nervous breakdown some time before she moved to Casper and was in Cheyenne for a period of time for treatment for her physical and mental condition. Plaintiff stated that she came to the United States because she thought she would be able to go back home to Paris; that otherwise she would not have left Paris. She testified that she would move somewhere other than Casper if she could get a better job and that she wanted to go on the concert stage. She stated that she would love to go back to Paris and, according to defendant, she wanted to go to Paris with the children and stay a year or two or three.

It appears herein that the defendant has a couple, a man and his wife, working for him on his ranch; that the woman is his housekeeper; that she can take proper care of the children; and that the children like her. A grade school is only about three or four city blocks from the home in which defendant is living and when the children come of high school age they can easily travel to Gillette on a bus which stops only a few feet away from his home. We might incidentally state that the defendant testified that while he would prefer that the children had both their father and mother to take care of them: "I would like to be the one that is responsible for them, to take the responsibility for them, to take the responsibility for their education and

their welfare." He testified further: "I just feel that there are things that she will put before the children if it comes to a test, or if it ever comes to that, I think her music interest, she said herself, comes before anything, family or anything else, if it comes to a conflict between the two items why she says she must have her music and her piano."

It has been held in a number of cases that the custody of children will be awarded to the father when it appears that the best interests of the children will be promoted and that while young children of tender age are ordinarily awarded to the mother that rule is not inflexible. Watkins v. Watkins, 221 Ind. 293, 47 N.E.2d 606; Robbins v. Robbins, 234 Iowa 650, 12 N.W.2d 564; Armour v. Armour, 135 N.J. Eq. 47, 104, 37 A.2d 29, 283; Buehler v. Buehler, 373 Ill. 626, 27 N.E.2d 466; Partin v. Partin, 270 Ky. 596, 110 S.W.2d 298; 2 Nelson, Divorce and Annulment, § 15.10 (2d Ed.). In Burke v. Burke, supra, the court stated at 103 S.W.2d 291, 292:

"* * * Ordinarily, where the parents are divorced, the custody of children of tender years, particularly if they are girls, will be awarded to the mother upon the ground that their welfare will be best served by receiving her affectionate care and attention. This rule, however, is not inflexible. There are circumstances under which the best interests of the children will be served by giving their custody to the father, though the mother is morally a fit person for the trust. The question must be determined by the facts of the particular case. As was said in Preston v. Preston, 227 Ky. 561, 13 S.W.(2d) 751, 752: 'Every case of this character must stand alone, and the circumstances surrounding the parties and the facts disclosed must all be considered for the purpose of reaching a conclusion as to what is for the best interest of the child. Such cases are always difficult * * *.'

*     *     *     *     *     *

"Under all the facts and circumstances, we cannot say that the chancellor erred in declining, at this time, to take the children from the father. In awarding the custody of children, a very large discretion must be permitted to the chancellor. He knows the witnesses and the circumstances, and is in a better position than this court to determine what disposition of the care and custody of the children will best promote their welfare. * * *"

This rule, we think, must be applied in the case at bar. The trial court saw the parties on the witness stand and was in a much better position to determine what should be done in connection with the question before us than we would be. We are unable to see how we would be justified to reverse the action of the trial court in this connection. After all, the court did not deprive the plaintiff of her children. She can visit them at any time and has custody and control of them during the summer months.

2. Plaintiff claims that the divorce should be granted to her rather than to defendant. The indignities testified to by the plaintiff related in the main to disagreements as to church affiliation and possibly as to the mating of the parties. The trial court evidently concluded that the reasons given for a divorce by the defendant outweighed the reasons given by the plaintiff. It appears herein from plaintiff's testimony that she was dissatisfied with her life on the farm almost from the beginning. That cannot be surprising. She testified that she received a degree in philosophy, that she attended a music academy, and that she is an expert pianist. We think it is quite clear that she was not equipped mentally or physically to leave the atmosphere of Paris and go to the rugged life twenty miles north of Gillette, Wyoming. It is altogether probable that she was not equipped as Ruth was when she was about to leave for a foreign country and told Naomi: "Whither thou goest, I will go; and where thou lodgest, I will lodge: thy people shall be my people and thy God my God: Where thou diest, will I die, and there will I be buried." (Ruth 1:16, 17). She insisted that defendant should buy a home in Gillette and said that she would divorce him if he did not do so. He was unable to buy a house in Gillette but he rented one and plaintiff moved into Gillette. She was still not satisfied and soon moved to Casper where she brought the action herein. Defendant went to Casper soon after plaintiff left Gillette and apparently stayed several weeks, seeking to induce plaintiff to return; he went again at Thanksgiving, again at Christmas time, and again a short time before the trial herein. He did not succeed in his efforts. Plaintiff testified that she had not loved her husband for ten years. She brought one and perhaps two different divorce actions against the defendant prior to the commencement of this action. She testified that there was no possibility of reconciliation; that she might have been willing to stay with her husband if she were living on a ranch of her own with her husband; and that her feelings, however, were all gone—"I don't want my husband." Counsel for the appellant has not cited any cases to show that the trial court was not warranted in giving the defendant the divorce. We find no good reason to disagree with the conclusion reached by the trial court. The judgment herein should be and is affirmed.

Affirmed.