**Meredith George WILSON, Appellant (Defendant below),**

v.

**Donna June WILSON, Appellee (Plaintiff below).**

**No. 3810.**

Supreme Court of Wyoming.

Aug. 11, 1970.

Alfred M. Pence, of Pence & Millett, Laramie, for appellant.

Robert W. Costin, of Davis & Costin, Laramie, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The matter before us involves a divorce.

Appellant, Meredith George Wilson, claims the district court erred in three respects, namely:

1. By refusing appellant permission to lay a foundation for the introduction of certain police records.

2. By awarding custody of the minor children of the parties to their mother, appellee herein.

3. By making an inequitable division of property.

### Police Records

A police officer testified at the trial that he was in charge of the records of the police department. When he was asked to identify Exhibit E, objection was made to admission of any police records on the ground that such records are hearsay.

The objection was no doubt early because the exhibit had not yet been offered. The court recognized this and stated it would reserve ruling until further foundation was made. The court then asked counsel for defendant to make an offer of proof with respect to the records, stating: "The court indicated to you he thinks they are improper. You have a right to make an offer of proof and I would suggest that you do so now."

Although counsel complains that he had no opportunity to ask the witness foundation questions, it is apparent the matter of admissibility had been previously raised and the court was now giving defendant an opportunity to make an offer of proof. The offer of necessity needed to show what records were to be offered; wherein they were relevant to the issues at hand; and the basis of admissibility.

The offer made, in its entirety, was this:

"Very well. The plaintiff at this time offers to prove, or the defendant offers to prove by this witness that those instruments which have been marked as Defendant's Exhibits E, F and G are original records of the police department of the City of Laramie, and that as

such records they are under his custody and control in his official position in the police department of the City of Laramie."

After defendant's offer was made plaintiff's attorney renewed his objection and it was sustained. Counsel for defendant then stated he wanted the record to show that no offer of the exhibits had been made in evidence. From this statement and from appellant's first assignment of error, we are aware that appellant is complaining because he was not permitted to ask foundation questions.

Perhaps it is a matter of semantics, or of technical procedures, but appellant failed to show us what his next question would have been. If the records are not shown to be admissible, wherein was defendant prejudiced by not being permitted to ask some unidentified foundation question? This, appellant has failed to show, and we cannot assume prejudice. Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1005.

Concerning the admissibility of the police records in question, appellant claims such records are admissible by virtue of § 1–166, W.S.1957, which reads:

"Written reports or finding of fact made by officers of this state, on a matter within the scope of their duty as defined by statute, shall, in so far as relevant, be admitted as evidence of the matters stated therein."

We call attention to the fact that § 1–166 authorizes written reports of officers of the state to be admitted as evidence only "in so far as relevant." Nothing in the defendant's offer even suggests that the records involved were relevant. The duces tecum subpoena which had been issued to the police officer required him to bring with him official records evidencing complaints by Mrs. Wilson concerning threatening telephone calls, disturbances or other matters.

Counsel for appellant freely admits he does not know what the records might show which would have benefited defend-

ant's case. Counsel argues he was entitled to have the records produced in court for examination in order to determine whether anything therein would be of help to defendant. However, the offer of proof made on defendant's behalf fails to suggest what defendant hoped or expected to find in the records.

No inference can be based on mere surmise, guess, speculation or probability. Tower v. Horn, Wyo., 400 P.2d 146, 147. Also, conjecture, speculation as to happenings, or the suggestion of a possibility cannot be made to take the place of evidence. Edwards v. Harris, Wyo., 397 P.2d 87, 91; Caillier v. City of Newcastle, Wyo., 423 P.2d 653, 656.

Defendant had the burden to show the police records he sought to have admitted were relevant. The suggestion of a possibility that they might reflect something relevant, did not satisfy that burden.

Moreover, counsel for defendant called the plaintiff for cross-examination, after the police reports were refused, and plaintiff was examined extensively about telephone calls. She admitted freely that she had received anonymous and threatening telephone calls; and that she had reported all of them to the police department. If more than this could have been established from the police records, we do not know what it would have been. Appellant does not suggest that he has reason to believe any particular facts of a relevant nature could have been established which were not established by plaintiff's admissions.

Procedures, in order to warrant a reversal, must not only be erroneous but also must be prejudicial. Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1004. Therefore, even if we were to consider the court's ruling concerning police records improper, we would still have to hold that appellant has not shown it to be prejudicial.

### Custody

Appellant contends the court abused its discretion in awarding custody of the minor

children of the parties to their mother, because the mother is of questionable moral character; and further because of her lack of religious faith.

■ There is no rule of law which says only persons without faults can be parents. Seldom if ever does a divorce court have a choice between a parent who is all good on one side and a parent who is all bad on the other side. The matter of awarding custody is a comparative proposition wherein the court exercises its best judgment and discretion and awards custody to one parent or to the other, according to what the court thinks is for the best interest and welfare of the children.

Without trying to justify or excuse the conduct of plaintiff in connection with matters testified to against her, we can say things equally undesirable in a father were testified to against the defendant. We will not pretend to list the good and bad points of each parent side by side, in an effort to second-guess the trial court on the matter of custody. We deem it sufficient to say we have reviewed the testimony carefully, and we find no abuse of discretion on the part of the trial court in awarding custody of the children to their mother.

In Lovejoy v. Lovejoy, 36 Wyo. 379, 256 P. 76, 79, rehearing denied 38 Wyo. 358, 267 P. 91, Justice Kimball spoke of the matter of property settlements and said this:

"The decision of the trial court should not be disturbed, except on clear grounds, as that court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties."

This statement is equally applicable to the matter of providing for the custody of children when a divorce is granted.

■ Before leaving the matter of custody, however, we think we should comment briefly on appellant's claim that Mrs. Wilson lacked religious faith. Counsel for appellant admits plaintiff testified she believes in God, Jesus Christ and the Bible. He wants us to remember these assertions

were made when the mother was fighting for custody.

Of course, counsel needs to be reminded that we are not triers of the case. The trial court had the right to believe plaintiff if it chose to do so. There was testimony concerning statements made by plaintiff on a particular occasion about religious beliefs. This testimony was in conflict. We will not therefore pretend to decide what plaintiff did or did not say on the occasion in question.

About church attendance and seeing that the children were sent to Sunday school and church, we find the record as favorable for plaintiff as it is for the defendant. Although counsel for appellant claims the evidence shows that plaintiff does not attend church or actively take part in the religious training of the children, he refers to "her minister." He argues that the courts should not prefer one religious faith over another in awarding custody, but suggests that a parent who is without any religious faith would not be a proper person to have custody.

Section 6–223, W.S.1957, makes it unlawful to deny to any person of good deportment the right of life, liberty, pursuit of happiness, or the necessities of life because of race, color, creed, or national origin. It was said in Jones v. Bowman, 13 Wyo. 79, 77 P. 439, 440, that the statutes of this state fail to make any distinction as to religious belief and prohibit such distinction from being made.

We think a reasonable interpretation of § 6–223, in the absence of authority to the contrary, is that it is unlawful to deny a person of good deportment rights because of creed or the absence of creed. Thus, even if we were to ignore the testimony of Mrs. Wilson that she has religious beliefs, it would be difficult to accept appellant's theory that a mother without religious beliefs should for that reason be denied custody of her children.

The first amendment to the United States Constitution specifies that "Congress shall make no law respecting an establishment

of religion." If Congress may not make such a law, then surely the courts should not do so.

We know of no standard set by any of the courts as to how much religion must be practiced by a parent before such parent can be considered a proper person to have custody of children. Appellant has cited no authority in this regard.

We therefore revert again to the principle that the matter of awarding custody is within the discretion of the trial court. In this case we fail to find clear grounds for disturbing the custody provision in the Wilson decree, and we decline to do so.

### Property

Appellant claims Mrs. Wilson was awarded property with a total net value of $13,914.47; and that Mr. Wilson was awarded property worth $11,105.50, with a requirement that he pay obligations and debts amounting to $15,046.70, which made a net minus value of $3,941.20. According to appellee's figures, the net value of property awarded to the wife is $13,749.47; and the value of property awarded to the husband, less the obligations he is required to pay, amounts to $19,391.80.

The decree awards certain described property to the plaintiff and certain described property to the defendant. It then also awards to defendant all other property of the parties not heretofore given to plaintiff, "including gun collection and coin collection." Mrs. Wilson testified her husband had valued the gun collection at $5,000 and the coin collection at $15,000. Appellant fails to take either collection into account in his tabulation of values.

If the court accepted the suggested value of $5,000 for the gun collection and the suggested value of $15,000 for the coin collection, it would sufficiently explain the difference in appellant's figures and appellee's figures. It would also reflect a greater value in property awarded to the husband than to the wife. It would indeed eliminate any reason to believe there was any inequity in the property settlement.

Although counsel for appellant seems to suggest there is some question as to whether defendant received all of the gun and coin collections, there is nothing in the record to substantiate such a suggestion. If the collections were not in existence, or if they did not end up in the possession of defendant, his remedy would be with the trial court. We can only assume the collections were retained by the husband and that they had sufficient value to make the defendant's total award equitable and fair.

When the court's property distribution in this case is viewed, item by item, it makes quite good sense. The major item awarded to the wife was the home. It was set over to her subject to an existing mortgage. Next in value, according to the figures of both parties, was the furniture. It is understandable why the trial court would think these items of property should go to the wife since there was need for her to maintain the home with its furnishings for herself and the children.

Then, it was the wife and not the husband who had a hobby of riding and caring for horses. Hence, five horses and related equipment were awarded to her. The only remaining item of property set over to the wife was a 1969 Chevrolet camper pickup. However, a Chrysler New Yorker automobile was set over to the husband and both parties have valued it well above the camper. No doubt the court considered the camper should go to the wife if the Chrysler went to the husband.

Failing to find clear grounds for setting aside the trial court's distribution of property, we will not disturb the decree insofar as it relates to a division of property. We have already indicated, also, that the award of custody of the children will not be disturbed; and that reversible error has not been shown in connection with the court's ruling relative to police records. The case must therefore be affirmed.

Affirmed.