**2-H RANCH COMPANY, INC.,**
Appellant (Defendant),

and

Charles R. Spratt (Defendant),

v.

**Robert C. SIMMONS, Eva F. Simmons,
Robert C. May, and Ila M. May,**
Appellees (Plaintiffs),

and

**Peter W. DeWitt and Linda G. DeWitt,**
Appellees (Intervenors).

No. 5729.

Supreme Court of Wyoming.

Feb. 9, 1983.

Charles R. Spratt, Laramie, on brief, for appellant.

No appearance for appellees.

Before ROONEY *, C.J., RAPER, THOMAS and ROSE **, JJ., and GUTHRIE, J., Retired.

RAPER, Justice.

This is an appeal[1] from the district court's denial of 2–H Ranch, Inc.'s (appellant's) motion to set aside a sheriff's sale of sixty residential lots belonging to appellant located in the City of Buffalo, Johnson County, Wyoming. The sheriff's sale was conducted pursuant to a writ of execution issued on what was purported to be a judgment entered against appellant by the district court.

We will reverse and remand.

Appellant presents two issues for our review:

"1. When two parties stipulate that one shall have a lien on the property of the other, can the lien be foreclosed by sale?

"2. Should a Sheriff's sale of real property be set aside when the sale fails to conform to statutory requirements?"

We need only address appellant's first issue to dispose of this appeal.

The dispute that led to this appeal began when the Simmonses and the Mays (appellees) filed suit against appellant for breach of contract. Appellees alleged that appellant breached an agreement it had entered with appellees in which appellant sold several house lots located in an as yet unimproved subdivision of Buffalo to appellees with the understanding that public sewer and water service would be installed within thirty to sixty days after the sale. Appellees complained that they relied on that understanding in making their purchase since without the promised improvements

appellees could not obtain the building permits required to commence construction of residences on their lots. Appellees complained that the sewer and water service was never installed in the subdivision and, as a result, they were harmed financially due to their inability to build homes on the lots. Appellant denied making any agreement with appellees to install sewer and water service in the subdivision.

The trial of this suit began on October 27, 1981. After the trial had begun, but before the court had heard the case, a recess was called during which a settlement agreement was reached between the parties. On December 22, 1981, the district court entered what is purported to be a judgment in the matter. It provided:

## "JUDGMENT

"THIS MATTER CAME ON for hearing on October 27, 1981 in the District Court for Johnson County, Wyoming. The plaintiffs were represented by Blair Klein, Esq., and the defendants were represented by Charles R. Spratt, Esq.

"Prior to commencement of trial, Blair Klein moved the Court for an order premitting [sic] him to withdraw as counsel for the plaintiff Jolue Hook and that she be dismissed from the action as a plaintiff without prejudice. In support of this oral motion, Mr. Klein testified that he had been unable to contact Mrs. Hook and that attempts to located [sic] Mrs. Hook by the other plaintiffs had also been unsuccessful, and therefore he could not effectively represent her. Following arguments of counsel, the Court found that the motion should be granted.

"After commencement of the trial, the parties met during a recess and following negotiations advised the Court that they had reached an agreement for settlement of the action. The parties *stipulated* and *agreed* as follows:

* Became Chief Justice on January 1, 1983.

** Chief Justice at time of oral argument.

1. This case was decided on appellant's brief alone since appellees failed to submit a brief and appellant waived oral argument.

"1. That the defendant, 2H Ranch, Inc., would refund to the plaintiffs Robert C. Simmons and Eva F. Simmons all monies paid by them for the property which was purchased from the defendant corporation, together with interest at the rate of 15% per annum.

"2. That the defendant, 2H Ranch, Inc., shall receive from the plaintiffs, Robert C. Simmons and Eva F. Simmons, a good and sufficient warranty deed free from encumbrance or defect to the following described real property:

"Lots 1, 2, and 3 of Block 77 of the North Burlington Re-subdivision to the City of Buffalo, Wyoming according to the official plat thereof.

"upon tender of such payment by the defendant, 2H Ranch, Inc.

"3. That such payment shall be due and payable within sixty (60) days of the date of this order, and if not paid in full shall constitute a lien against the assets of the defendant, 2H Ranch, Inc.

"4. That the total sum due and owing from the defendant, 2H Ranch, Inc. to the plaintiffs Robert C. Simmons and Eva F. Simmons, is as follows:

"(A) The sum of $28,500 together with simple interest at the rate of 15% per annum from May 15, 1979.

"(B) The sum of $1,091.25 together with simple interest at the rate of 15% per annum from September 18, 1979.

"(C) The sum of $1,094.00 together with simple interest at the rate of 15% per annum from August 20, 1980.

"(D) That such payment shall be made by certified or cashier's check payable to 'Robert C. Simmons, Eva F. Simmons, and Blair Klein'.

"5. That the last two payments ('B' and 'C' above) are reimbursement to the plaintiffs Robert C. Simmons and Eva F. Simmons for realtor fees paid in further transfers made by plaintiffs Robert C. Simmons and Eva F. Simmons to the plaintiffs Robert C. May and Ila M. May. All plaintiffs agree to cooperate with the defendant, 2H Ranch, Inc., to obtain refunds from the realtors to whom these payments were made, however, it shall be the burden of the defendant 2H Ranch, Inc. for payment of any legal costs in maintaining any action for such refunds.

"6. That with the tender of payment by 2H Ranch, Inc. in accordance with the terms set forth above, the delivery of the aforesaid warranty deed, and the cooperation of the plaintiffs in obtaining a refund from the realtors, this action shall be dismissed with prejudice to all parties, and each party shall bear his or her own costs." (Emphasis added.)

[End]

The foregoing "judgment" was a separate document, signed by the district judge and dated the 22nd day of December, 1981.

On February 25, 1982, appellees filed a precipe for execution requesting that the clerk of the district court issue a writ of execution against the property of the appellant located in Johnson County, Wyoming. The clerk of court, that same day, issued a writ of execution on the aforementioned "judgment" of December 22, 1981, for $43,245.45 plus $12.61 interest per day from February 25, 1982. It directed the Johnson County Sheriff to execute against the property of appellant located in Johnson County, Wyoming. See §§ 1–17–101 and 1–17–308, W.S.1977. The sheriff proceeded to levy execution upon sixty lots owned by appellant in Buffalo. See § 1–17–310, W.S. 1977. On February 26, 1982, the sheriff, pursuant to § 1–17–316(a), W.S.1977, appointed three disinterested property owners to appraise the sixty lots upon which he intended to levy execution. On March 1, 1982, the appraisers returned an appraisal of $259,000 for appellant's sixty lots. The sheriff then proceeded to advertise the sixty lots belonging to appellant for sale. The property was to be sold to the highest bidder at public vendue on March 29, 1982. On the day of the sale, only one bid—a bid of $135,500—was received. That bid was well below the two-thirds of appraised value required by § 1–17–316(c), supra, for a valid sale. The bidder then agreed to leave his $135,500 bid open for ten days.

On March 30, 1982, the sheriff reconvened the appraisers he had appointed previously, advised them that the only bid received for appellant's property had been for $135,500, and requested that they reappraise appellant's property. They did so, and, on that same day, returned an appraisal of $135,500 for appellant's sixty lots. The sheriff and appellees then, still on March 30, 1982, moved that the district court confirm the sheriff's sale of appellant's property for $135,500. The motion for confirmation was set for hearing on April 6, 1982. Appellant's attorney, by his own account, received notification of the pending motion hearing on the evening of April 5, 1982, and was, therefore, unable to be present for the April 6 hearing. The confirmation hearing was held as scheduled, and, after the district court, pursuant to § 1–17–321, W.S.1977, found that the sale was made in all respects in conformity to the Code of Civil Procedure, it confirmed the sale.

On May 10, 1982, appellant filed a motion pursuant to Rule 60(b), W.R.C.P.[2] to set aside the sheriff's sale. After a hearing on the motion, the district court denied appellant's motion on June 29, 1982; this appeal followed.

■ Appellant's first argument is that the judgment entered by the district court would not permit the issuance of the writ of execution against its property; therefore, the entire execution and sale procedure was conducted without authority and should have been set aside. We agree with that contention. The judgment entered by the district court on December 22, 1981, is certainly a curious document; though so labeled, it is not a judgment and we cannot

hold that it is under the Wyoming Rules of Civil Procedure. It does not provide the basis for the ultimate disposition of appellant's property.

Rule 54(a), W.R.C.P. provides a definition of the term judgment as used in the rules of civil procedure:

"(a) *Definition; form. A judgment is the final determination of the rights of the parties in action.* 'Judgment' as used in these rules includes a decree. A judgment need not contain a recital of pleadings, the report of a master, or the record of prior proceedings. A direction of a court or judge, made or entered in writing, and not included in a judgment, is an order." (Emphasis added.)

Rule 58(a), W.R.C.P., enlightens us further when it states: " * * * All judgments and orders must * * * *specify clearly the relief granted or order made* in the action." (Emphasis added.) The purpose behind requiring that a judgment be the final determination of the rights of the parties in an action is one of judicial as well as financial economy in that such a rule prevents multiple appeals in the same suit, *Jacobson v. Wickam,* 36 Wyo. 522, 257 P. 7 (1927) (decided under the then existing Code of Civil Procedure); it prevents piecemeal litigation in the appellate courts. *Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945). Using the same definition of judgment as the one appearing in Rule 54, W.R.C.P., this court in *Jacobson v. Wickam,* supra, said: "It is at least doubtful whether the Code contemplates more than one judgment in the same action against the same parties." A judgment should be the final determination of an action and thus should have the effect of terminating the litiga-

---

**2.** Rule 60(b), W.R.C.P., provides in pertinent part:

"On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (4) the judgment is void; * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within one (1) year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not

affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding as provided in sections 3–3801 [§ 1–16–401], 3–3805 [repealed, § 1, ch. 188, Laws 1977], and 3–3810 [§ 1–16–408], W.C.S.1945, or to grant relief to a party against whom a judgment or order has been rendered without other service than by publication as provided in section 3–3802 [§ 1–16–402], as amended. * * * "

tion. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2651 at 10 (noting *Catlin v. United States,* supra). That view is in accord with what Rule 54(a), W.R.C.P. provides.

██ At this point, however, we note that some courts have authorized and upheld conditional judgments. 10 Wright & Miller, supra, at 13 (discussing Rule 54(a), F.R.C.P.). Conditional judgments are judgments that do not become effective unless the conditions they contain have been complied with or that may be defeated or amended by the performance of a subsequent act or occurrence. *In Re Roney,* 139 F.2d 175 (7th Cir.1943). Conditional judgments, however, are not final or appealable judgments under Rule 54(a), F.R.C.P., until all contingencies have been removed. Id. at 177; 10 Wright & Miller, supra at 14. Likewise, under Rule 54(a), W.R.C.P., where a judgment is defined as a final determination of the rights of parties to an action, a conditional judgment cannot be held to be a judgment until the contingencies contained within it have been removed.

The so-called judgment in this case merely reports the terms of an agreement reached between the parties and states that if those terms are lived up to, the action would be "dismissed with prejudice to all parties." It is at best a conditional judgment that never had its conditions met. The terms of the agreement were not met since appellant failed to return the purchase price and other monies to the appellees within sixty days as required by the agreement. With appellant's failure to pay within the agreed period, the contingency that the dismissal of the action was predicated upon became impossible; therefore, dismissal of the action under this judgment could never occur. The contingency required for the judgment to be effective could never be removed. Under its own terms, this judgment could never take effect to grant the only relief it purported to grant—dismissal with prejudice.[3] The rights of the parties

to the original suit remained unresolved by the district court; therefore, there was no judgment as defined by Rule 54(a), W.R.C.P., entered in this case.

Without a judgment, it logically follows that there could be no writ of execution properly issued since such a writ is issued to enforce a judgment, § 1–17–308, supra. Further, since appellant's property was sold pursuant to a writ of execution issued on a nonexistent judgment, it follows that the sheriff's sale was not conducted in conformity with the Code of Civil Procedure as required by § 1–17–321, supra, and should not have been confirmed by the district court.

██ The district court was not without jurisdiction to enter a judgment in this case, it simply did not enter a judgment. Therefore, rather than being faced with a judgment that is void for lack of jurisdiction on the part of its rendering court, or a judgment that is voidable as being erroneous, we are faced with what can only be termed a nonexistent judgment. In determining how to deal with a nonexistent judgment and its effect on the execution and sale of appellant's property, we turn to the law governing execution on void judgments because, although one is technically different from the other, the concepts are analogous. A void judgment is essentially a nullity; it is entitled to no force or effect. *Olson v. Leith,* 71 Wyo. 316, 257 P.2d 342 (1953); *Wunnicke v. Leith,* 61 Wyo. 191, 157 P.2d 274 (1945). Likewise, a nonexistent judgment can certainly have no force or effect.

██ An execution issued on a void judgment is itself void; and acts, such as the sale of property performed thereunder, are also void. *Wunnicke v. Leith,* supra; see also, 30 Am.Jur.2d, Executions § 10. It logically follows that an execution issued on a nonexistent judgment and any acts performed thereunder can have no effect; the

---

**3.** Although we determine that the judgment in this case never took effect, the first portion of that judgment, dismissing one of the originally named plaintiffs, will be treated as an order of

dismissal as to that party and as such effectively dismisses that party without prejudice. Rule 54(a), W.R.C.P.

subsequent acts taken on a nonexistent judgment must be void. To hold otherwise would be to give effect to the nonexistent judgment, and that would be unconscionable. We refuse to give any effect to a nonexistent judgment; therefore, we hold that the execution sale and subsequent confirmation of the sale were void for lack of statutory authority to conduct and perform the same.

■ As noted earlier, appellant's motion to set aside the sheriff's sale was properly brought under Rule 60(b), W.R.C.P. (See fn. 2.) In particular, we find Rule 60(b)(4), W.R.C.P., to be applicable here in that it deals with void judgments; therefore, we set out our standard of review. In *Emery v. Emery*, Wyo., 404 P.2d 745 (1965), this court had occasion to discuss Rule 60(b)(4), W.R.C.P., and chose to follow the precedent established under the similarly worded federal rule—Rule 60(b)(4), F.R.C.P. This court held that courts, when confronted with a Rule 60(b)(4), W.R.C.P. motion, have no discretion to grant or deny relief when the judgment has been resolved to be void. When confronted with a Rule 60(b)(4), W.R.C.P. motion and a void judgment, courts must relieve the parties from such judgment. Once a judgment is determined to be void, there is no question of discretion on the part of the court when a motion is made under Rule 60(b)(4). 11 Wright & Miller, Federal Practice and Procedure: Civil § 2862 at 197.

Since the sale of appellant's property and the subsequent judicial confirmation were void for the foregoing reasons, we hold that the district court had no discretion to deny appellant's requested relief. Appellant, in his motion, specifically called the district court's attention to the fact that the sheriff's sale was improper.[4] The district court, therefore, erred in denying appellant's motion.

Although, as we noted at the beginning of our opinion, our decision on appellant's first issue disposes of the case, we feel compelled to address appellant's second issue which questions the peculiar reappraisement procedure used by the sheriff. It is proper for us to address questions which are bound to arise again if left unresolved. *Rocky Mountain Oil and Gas Ass'n v. State*, Wyo., 645 P.2d 1163 (1982). In reviewing the statutes governing enforcement of judgments by execution, § 1–17–301, et seq., W.S.1977, we are unable to find any authority for the reappraisal procedure used by the sheriff in this case. Several statutes deal with the appraisal of property subject to execution sale. Section 1–17–316, supra, provides in pertinent part:

"(a) The officer who levies execution upon lands and tenements shall call an inquest of three (3) disinterested property owners who are residents of the county where the lands taken in execution are situate and administer to them an oath to view and impartially appraise the property levied upon. The property owners shall return to the officer as soon as possible a signed estimate of the value of the property.

"(b) When the officer receives the return, he shall promptly deposit a copy with the clerk of the court from which the writ issued and immediately advertise and sell the real estate as provided by law.

"(c) If upon the return it appears that two-thirds of the appraised value of the lands and tenements levied upon is sufficient to satisfy the execution with costs, the judgment on which the execution is issued shall not operate as a lien on the residue of the debtor's estate to the prejudice of any other judgment creditor. *No tract of land shall be sold for less than two-thirds of the value returned in the appraisal except as expressly authorized by law.*" (Emphasis added.)

Section 1–17–337, W.S.1977, provides:

"When real estate taken on execution is appraised and is twice advertised and offered for sale but remains unsold for lack of bidders, the court from which the exe-

---

4. The pertinent paragraph in the motion states:

"6. That the sale resulted from a lien against the petitioner's [appellant's] proper-

ty, but that the procedure to foreclose a lien was not followed, and the sale is contrary to Wyoming law."

cution issued on motion of the plaintiff or defendant shall set aside the appraisement and order a new appraisement to be made, or set aside the levy and appraisement and award a new execution to issue. When the real estate or any part thereof has been three (3) times appraised and thereafter twice advertised and offered for sale, and remains unsold for lack of bidders, the court may direct the amount for which the property shall be sold."

Section 1–17–338, W.S.1977, provides in pertinent part:

"When premises are ordered to be sold and having been twice advertised and offered for sale remain unsold for lack of bidders, on motion of the plaintiff or defendant the court from which the order of sale issued shall order a new appraisement * * *."

None of the aforementioned statutes provide for the extraordinary reappraisal procedure followed by the sheriff. To allow the sheriff to seek a reappraisal to fit the bid, which is obviously what occurred here, would make the judicial protection afforded a judgment debtor's property by the statutes a farce. We could not condone such a procedure. The statute clearly allows for reappraisal of a judgment debtor's property, §§ 1–17–337 and –338, supra, or the setting of a sales price by the court, § 1–17–337, supra; but, in instances where those procedures are applicable, safeguards are provided to protect the interests of the judgment debtor. The procedure followed by the sheriff provides no such safeguards and was done totally without justification or authority. It was improper.

Our decision in this matter in no way attempts to decide any rights between the parties to the original action. We only reach those issues raised by appellant that called to our attention the shocking disregard of rules and procedure that we have addressed.

Reversed and remanded for proceedings consistent with this decision and opinion.

GUTHRIE, Justice, Retired, concurs in the result.