**Martin J. GOSS, Appellant (Plaintiff),**

v.

**Pamela J. GOSS, Appellee (Defendant).**

No. 88–267.

Supreme Court of Wyoming.

Sept. 6, 1989.

Phillip T. Willoughby, Casper, for appellant.

John M. Burman and Ann B. Stevens, Faculty Supervisors, Linda L. Goff and Donald M. Gerstein, Student Legal Interns, Wyoming Legal Services, College of Law, University of Wyoming, Laramie, for appellee.

Before THOMAS, URBIGKIT, MACY, and GOLDEN, JJ., and ROONEY, J., Retired.

THOMAS, Justice.

The controlling issue here, guiding the resolution of this case, is whether sufficient service was made on an ex-wife (mother) of a Petition for Modification of Order Judgment and Decree to vest the district court with jurisdiction to enter a default judgment modifying the custody provisions of the Order, Judgment, and Decree in a divorce case. In this appeal, taken from a subsequent Order Awarding Legal Custody of the Minor Children to Defendant—Judgment for Past Due Child Support that was entered in a proceeding initiated by the mother, the parties choose to debate the merits of that order, and they do not question the validity of the earlier default. We have an obligation to raise questions of jurisdiction on our motion,

however, and we conclude that the district court was without jurisdiction to enter the default judgment modifying the child custody provisions in the Order, Judgment and Decree. The effect of that lack of jurisdiction is that the order awarding the custody of the minor children to the father in the initial modification proceeding was void, and the subsequent proceeding initiated by the mother which resulted in the order from which this appeal is taken was unnecessary in terms of adjusting the status quo. The several claims of error can be considered only upon the assumption that the issues as joined contemplated an effort by the divorced husband (father) to obtain a valid order awarding custody of the minor children to him. We affirm the decision made by the district court awarding custody to the mother.

In the Brief of Appellant Martin J. Goss, the father asserts the issues on appeal to be:

"1. Did the trial court err by failing to enforce its order of custody?

"2. Did the trial court err ruling the evidence presented was sufficient to award custody of the minor children to the appellee?

"3. Did the trial court err and abuse its discretion awarding custody of the minor children to the appellee?

"4. Did the trial court err as a matter of law by failing to consider the best interests of the children in a child custody dispute, and by considering instead only the best interests and wishes of the mother?"

In the Brief of Appellee, the mother submits her own statements of those issues as follows:

"Did the trial court properly exercise its discretion in awarding child custody to appellee?

"I. Did the trial court have legal justification to not enforce its earlier custody order?

"II. Was there sufficient evidence to find that appellee was the proper parent to receive custody?

"III. Did The trial court consider the best interests of the children?"

We consider the issues framed by the parties in their respective briefs from the perspective that the case presents an effort by the father to gain custody. We address those issues from that perspective because, as stated, they assume the validity of an earlier order that modified the custody provision of the Order, Judgment and Decree by awarding custody to the father. Based upon that assumption, the parties argue the usual requirements for modifying custody from the premise that this subsequent proceeding initiated by the wife was designed to alter the status quo and, therefore, certain evidentiary burdens were imposed upon the mother. In the absence of jurisdiction in the district court to enter the first order that modified child custody, all of the assumptions in the case now before us are erroneous.

By an Order, Judgment and Decree entered on July 30, 1981, the marriage of the parties was dissolved. A divorce was granted to the father, and custody of the three minor children of the parties was placed with the mother. The father was awarded reasonable rights of visitation, and he was required to pay child support in the amount of $100 per month per child. Each of the parties subsequently remarried and, in August of 1983, both were living in Germany. The father was stationed there as a member of the United States Army, and the mother was living there because of her new husband's duty assignment with the United States Army. The mother took the children to the father for a period of visitation that was to end prior to the beginning of their new school term on August 27, 1983. Although the father was aware of the mother's residence, he had not seen the children in the more than two years since the divorce. Three days before school was to begin, the mother asked the father to return the children to her, but he did not return them. Instead, on September 23, 1983, the father caused to be filed in the original divorce case a Petition for Modification of Order, Judgment and Decree in which he prayed for a modification granting him permanent care and custody of the children. In a letter to his counsel

that is included in the record, the father refers to a letter from the attorney, dated August 5, 1983, requesting information about the children, which certainly supports an inference that the father planned to seek custody before the visitation period was initiated.

The father attempted to serve process on the mother through notice by certified mail addressed to the army post office address of her new husband. That letter was returned by the postal service marked "refused by addressee." The father then attempted service upon the mother by publication in the *Casper Star Tribune*. The mother did not respond to the father's petition; her default was entered; and the order modifying custody was entered on January 27, 1984, awarding custody to the father. Meanwhile, in Germany, the mother had retrieved her children from the father's custody with the help of German police. That occurred a short time before the filing of the modification order. From the time the children were returned until December of 1987, the father provided no child support, contacted the children only once, and made no request for visitation with them. During that period, he knew where to contact the mother and the children.

On March 20, 1987, the mother, continuing in the original divorce proceeding, filed a Petition for Modification—Motion for Order Granting Temporary Custody—Motion for Order Granting Permanent Custody—Motion to Set Child Support and Enter Income Withholding Order. Personal service of that pleading was made upon the father. The petition alluded to the order entered on January 27, 1984 and sought permanent custody of the minor children for the mother. The issues in the proceeding then were joined by an Answer, a Motion for Order to Require Physical and Mental Examination of the Minor Children, and a Motion for Physical Custody, pursuant to which the father sought enforcement of the earlier order, all filed on June 4, 1987.

The trial on the mother's petition was commenced on January 11, 1988, but it was not finished and the proceedings were continued until April 28, 1988. In the meantime, a Temporary Custody and Support Order Continuance had been entered on September 3, 1987, awarding temporary custody to the mother. When the proceedings were recommenced on April 28, 1988, the father presented evidence that the mother had been dating and had intended to marry a man who recently had plead guilty to a charge of sexually assaulting the female child. The father contended that the mother was maintaining her relationship with that individual, and he argued that her behavior demanded that custody of the three children be immediately changed to him. The district court considered the mother's continuing association with the sexual offender a threat to the welfare of the children, and it concluded that it would be appropriate to allow the mother some time to decide whether she, in fact, would continue that association. Temporary custody then was granted to the father until the trial could be completed. The father later sought a further continuance, and the court then returned temporary custody to the mother while, at the same time, setting the trial for August 1, 1988.

After the trial, the court announced its decision:

"I don't have any doubt that each of these parties love the children in their own way. However, I seldom see a case like this.

"There can be no excuse for the Mother's activities as far as those involving Mr. Patterson. I think she continued a relationship when one would have thought there would be hate rather than that.

"But on the other hand, there can be no excuse for Mr. Goss to ignore the children for years and leave the Mother alone with the children to raise the children.

"There can be no excuse for either party thinking of themselves as better and disregarding the welfare of the children.

"And there can't be any excuse for the Father and his conduct with the children when he had them in discussing the case

with them, belittling the Mother as he did.

\* \* \* \* \* \*

"Back in '83, apparently the Mother asked for some help and left the children with the father for a period of what, six months. I know there was an argument about whether she could get them back or whether she couldn't. But as I followed the evidence, *the attempts at modification after that should not hold because I think he could have found the Defendant had the Plaintiff wanted to find her.*

"It will be the ruling of the Court that the Mother be awarded the custody of the children. She gave birth to the children. She was there for those years all alone. I can't forget that.

"No evidence has really been shown out of the Patterson thing that she isn't a good and loving Mother." (emphasis added).

The trial court then found that it was in the best interests of the children to award permanent custody to the mother, conditioned upon her avoiding any further contact with Patterson. Its order to that effect was entered on August 18, 1988, and it is from that order that the appeal to this court is taken.

As noted in the recitation of his issues, the father asserts error in the decision of the district court to grant custody to the mother. His argument is that he had legitimately gained custody of his three children in 1984 and that the mother had failed to establish the requisite grounds for modification of that earlier modification order. We conclude, however, that the order of January 7, 1984, awarding custody to the father, was void. It follows that, at the time the mother initiated the instant proceedings, she still had legal custody of the children. For that reason, we need not determine whether the mother produced sufficient evidence of a change of circumstances to warrant a modification, or whether the district court could reasonably conclude that those changes necessitated the return of custody to the mother in the best interests of the children.

Our rule is that we can uphold the decision of a district court if it is sustainable on any theory supported by the record. *Milton v. Mitchell,* 762 P.2d 372 (Wyo. 1988); *Ferguson v. Ferguson,* 739 P.2d 754 (Wyo.1987); *Walker v. Karpan,* 726 P.2d 82 (Wyo.1986). Furthermore, this court has recognized its inherent power, independent of any statutory authority, to vacate a void judgment when its invalidity is apparent on the face of the record. A void judgment is a nullity, and we refuse to give effect to a nonexistent judgment. *Matter of TRG,* 665 P.2d 491 (Wyo.1983); *2–H Ranch Co., Inc. v. Simmons,* 658 P.2d 68 (Wyo.1983). A custody modification proceeding is filed under the same docket number as the original divorce action, but it is considered a separate and distinct proceeding. *Nicholaus v. Nicholaus,* 756 P.2d 1338 (Wyo.1988); *Macy v. Macy,* 714 P.2d 774 (Wyo.1986); *Leitner v. Lonabaugh,* 402 P.2d 713 (Wyo.1965). In such custody modification proceedings, as is true with respect to all judicial proceedings, the principles of due process demand that a party called upon to answer a complaint, or a petition for modification, be furnished notice of the allegations against him and a meaningful opportunity to be heard on the issues. *Bjugan v. Bjugan,* 710 P.2d 213 (Wyo.1985); *Hall v. Hall,* 708 P.2d 416 (Wyo.1985); *Tanner v. Tanner,* 482 P.2d 443 (Wyo.1971). The court may permit those fundamental due process rights to be infringed only to the extent permitted by legislative or judicially promulgated rules of procedure. *Hall.* The general rule is that it is necessary to comply strictly with statutes or rules setting forth the requirements for service of process. *Midway Oil Corp. v. Guess,* 714 P.2d 339 (Wyo.1986). More particularly, statutes permitting the service of process upon nonresidents, because those statutes are in derogation of the common law, are to be strictly construed. This is true as well of court rules permitting service by publication, and strict and full compliance with them is demanded. *Duncan v. Duncan,* 776 P.2d 758 (Wyo. 1989); *In re Lonquest's Estate,* 526 P.2d

994 (Wyo.1974); *National Supply Company v. Chittim,* 387 P.2d 1010 (Wyo.1964).

In the course of these proceedings, the father, following an attempt to serve the mother by certified mail with his petition for custody modification, then attempted to serve her by publication. The version of the Uniform Child Custody Jurisdiction Act adopted by the Wyoming legislature requires with respect to the initiation of such proceedings:

"Before making a decree under this act reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of the child. *If any of these persons are outside this state notice and opportunity to be heard shall be given pursuant to W.S. 20–5–106. Section 20–5–105, W.S. 1977 (June 1987 Repl.)* (emphasis added).

"Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:

"(i) By personal delivery outside this state in the manner prescribed for service of process within this state;

"(ii) In the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction;

"(iii) By any form of mail addressed to the person to be served and requesting a receipt; or

"(iv) *As directed by the court* including publication *if other means of notification are ineffective."* Section 20–5–106(a) (June 1987 Repl.) (emphasis added).

The father concedes that, at the time he attempted service of his petition, the mother was not in the state of Wyoming and that he did not accomplish service upon her either personally or by mail.

■ If the district court, pursuant to the statute, had directed the father to accomplish service by publication (the record is silent with respect to any such direction by

the court) the service should have been accomplished in accordance with *Rule 4, W.R.C.P.* That rule provides, in pertinent part:

"(e) *Service by publication.*—Service by publication may be had where specifically provided for by statute, and in the following cases:

. . . . .

"(9) In suits for divorce, for alimony, to affirm or declare a marriage void, or the modification of any decree therefor entered in such suit, when the defendant is a non-resident of the state, or his residence cannot be ascertained, or he conceals himself in order to avoid service of process;

. . . . .

"(f) *Requirements for service by publication.*—Before service by publication can be made, *an affidavit* of the party, his agent or attorney, *must be filed stating that service of a summons cannot be made within this state,* on the defendant to be served by publication, *and stating his address,* if known, *or that his address is unknown and cannot with reasonable diligence be ascertained,* and that the case is one of those mentioned in paragraph (e) of this rule; and when such affidavit is filed, the party may proceed to make service by publication." (emphasis added).

The affidavit in the record, executed by the father's attorney, states:

"1. An attempt was made to serve the Defendant in the above entitled matter by certified mail, return receipt requested. Such letter was returned to Affiant's office marked by the post office as 'refused by addressee.'

"2. Defendant is not a resident of the State of Wyoming, living in the Country of Germany.

"3. The minor children in this matter are residents of the State of Wyoming, living in the Country of Germany with their natural father.

"4. The natural father in this matter is a resident of the State of Wyoming, but is living in the Country of Germany.

"5. This action was originally commenced as a divorce action under the above-Civil Action Number, and the Court has continuing jurisdiction over this matter inasmuch as this is a request of modification of the Decree of Divorce.

"6. Inasmuch as the Defendant has refused service, and is in a foreign country and is avoiding service, that is that Plaintiff has no other method available to serve the Defendant, and because there is a dire need, as evidenced in the file and Complaint, for the Court to hear this matter, your affiant states that this is an appropriate case for service under Wyoming Rules of Civil Procedure 4(e)(9)."

The affidavit is sufficient to establish that the mother could not be served within Wyoming and that the case was a proper case for service by publication (assuming that the court had so directed). The affidavit does not comply with the requirements of *Rule 4(f), W.R.C.P.* It is silent with respect to the mother's address, and it does not state in the alternative (because counsel could not) that the mother's address is unknown and cannot be ascertained through reasonable diligence.

 We have pointed out that requiring such an affidavit, prior to permitting service by publication, assists in assuring that service by publication will occur only where service by other means, more certain to give a party actual notice, is either unreasonable or impractical. *Lonquest,* 526 P.2d at 998. With respect to the filing of such an affidavit, our rule is that the requirements of *Rule 4(f), W.R.C.P.* are minimal and demand strict compliance. Thus, even where the affidavit states the last known address of the defendant, it is deficient if it does not also state a present address or that the present address cannot be ascertained through due diligence. We have held that such a deficiency deprives the district court of jurisdiction over the person to be served and prevents it from entering a valid and binding judgment. The effect of that rule is that a deficiency, like that reflected by the affidavit of counsel for the father in this instance, makes the service by publication invalid and,

therefore, any judgment purportedly grounded upon that service is rendered void. *Lonquest; Emery v. Emery,* 404 P.2d 745 (Wyo.1965); *National Supply,* 387 P.2d 1010. Upon determining that a judgment is void, the court has no discretion with respect to such a judgment, but it must exercise its inherent power and grant relief from that judgment. *Emery,* 404 P.2d at 749.

 The father failed to effect proper service of his petition to modify the custody provisions of the divorce decree upon the mother. The district court, for that reason, did not acquire personal jurisdiction over the mother and could not enter a valid default judgment against her because of her failure to appear. The order transferring custody of the three children from the mother to the father was void and of no effect. At the time the mother commenced this proceeding with her petition to modify custody, she still had legal custody over the children pursuant to the original Order, Judgment and Decree. While the father did not deem it necessary to seek affirmative relief in his response to the mother's petition, to the extent that any issues were present for the court to adjudicate, the burden of establishing a substantial change in circumstances so as to warrant a modification of the original Order, Judgment and Decree had to be assigned to the father, not the mother. All the foregoing is consistent with the ultimate disposition by the district court and, indeed, some of the comments in the record manifest the trial court's recognition and adoption of these principles.

 We are willing to assume that the trial court may have recognized amendments to the pleadings sufficient to raise issues as to the propriety of awarding custody to the father. The rules with respect to the action of the district court in such matters are well established. The party seeking to modify the provisions of a child custody decree must assume the burden of demonstrating to the court a substantial change in the circumstances affecting the child's welfare occurring subsequent to the entry of the initial decree. Not only must

the court find that those changes are so substantial and material to the well being of the child as to warrant modification, but it also must conclude that the desired modification will be in the best interest of the child. *Ayling v. Ayling,* 661 P.2d 1054 (Wyo.1983); *Tanner,* 482 P.2d 443; *Leitner,* 402 P.2d 713. We will not disturb the decision of the trial court in this regard in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion. The trial court does not abuse its discretionary authority if, under the circumstances found from the record, it could have reasonably concluded as it did. *Kreuter v. Kreuter,* 728 P.2d 1129 (Wyo.1986); *Fanning v. Fanning,* 717 P.2d 346 (Wyo.1986); *Ayling.* Our perusal of the record in this case persuades us that, assuming the court was considering a claim by the father of the propriety of modifying custody, it still could have reasonably concluded as it did.

The order of the district court, continuing custody of the children in the mother, is affirmed.

ROONEY, J., Retired, files a dissenting opinion.

ROONEY, Justice, Retired, dissenting.

The majority opinion properly recites the fact that

"We will not disturb the decision of the trial court in this regard [modification of child custody] in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion."

Here there is not only a "serious procedural error," but, more importantly, there is a "clear and grave abuse of discretion"

1. The appellant was plaintiff in the *original* divorce action wherein custody of the children was given to appellee.

2. Of interest is whether or not the *mailing, without more,* of such petition of appellant under the Uniform Child Custody Jurisdiction Act is sufficient for jurisdiction when the notice is returned marked, as here, "refused by addressee [appellee]." Such Uniform Act provides that such notice may be:

and a "violation of a recognized principle of law."

## PROCEDURAL ERROR

The majority opinion considers "the controlling issue here" to be whether an earlier modifying judgment[1] awarding custody of the children to appellant was void because the court lacked jurisdiction to enter such judgment. The majority of the court decides that such modifying judgment was void because appellee was not properly served with appellant's petition to modify the child custody provisions of the original divorce decree.[2] The majority opinion then notes that, since appellee already had legal custody of the children when she initiated this proceeding to obtain such custody, she did not have the burden of establishing a change of circumstances to warrant a modification of the decree. The record is not positive as to whether the award in this matter in favor of appellee was because she was required to carry such burden and did so, or whether it was because such burden was on appellant and he failed to carry it.[3] We should not presume either to have been the case. Certainly, the parties had no clear understanding in this respect, and this procedural defect could have had an effect on the rational presentation of the evidence.

The majority opinion recognizes this procedural error as serious and as a "controlling issue." Accordingly, it should not simply be disregarded. The error should be corrected by having the substantive issues tried under a correct procedure wherein the court and the parties understand and agree on the procedural status of the matter. The error is sufficiently serious to prevent the trial court and this court from resolving the substantive issue.

"By any form of mail *addressed* to the person to be served and requesting a receipt[.]" W.S. 20–5–106(a)(iii) (emphasis added).

3. The trial court was additionally handicapped by the fact that the trial was interrupted and delayed for long periods of time on more than one occasion and by the fact that some of the witnesses testified out of order.

## ABUSE OF DISCRETION AND VIOLATION OF A PRINCIPLE OF LAW

The fact that the "welfare and best interests" of the children are of paramount consideration in determining their custody has become a recognized principle of law. *Linch v. Harden*, 26 Wyo. 47, 176 P. 1546 (1918); *Crummer v. Crummer*, 44 Wyo. 1, 7 P.2d 223 (1932); *Burt v. Burt*, 48 Wyo. 19, 41 P.2d 524 (1935); *Curran v. Curran*, 51 Wyo. 217, 65 P.2d 243 (1937); *Ramsey v. Ramsey*, 76 Wyo. 188, 301 P.2d 377 (1956); *Butcher v. Butcher*, 363 P.2d 923 (Wyo. 1961); *Henson v. Henson*, 384 P.2d 721 (Wyo.1963) (visitation question); *Taylor v. Taylor*, 388 P.2d 192 (Wyo.1964); *Wilson v. Wilson*, 473 P.2d 595 (Wyo.1970).

A corollary thereto is that consideration of the real or supposed derelictions of one parent or the other is pertinent only as such may pertain to the "welfare and best interests" of the children and not for the purpose of punishing or rewarding one of the parents. *Curless v. Curless*, 708 P.2d 426 (Wyo.1985); *Wilson*, 473 P.2d at 595; *Henson*, 384 P.2d at 721.

In this case, the evidence and the consideration thereof emphasized the parental faults without relating such faults to the "welfare and best interests" of the children—excepting the damage inflicted upon the daughter of the parties as a result of appellee's immorality.

The *uncontradicted* evidence was that appellee brought one Terry Patterson, a convicted felon, into her home and lived with him without marriage. The children observed this immoral situation. Terry Patterson was, and is, a pervert, and he sexually assaulted one of the children, S.G., a female, age 11 years, over the period of one and a half years. Finally S.G. reported the assaults to her teacher—not to her mother. In the note to her teacher, she said, "I need help can you help us plese [sic]?" The note resulted in Patterson's arrest and subsequent plea of guilty to second decree assault[4] on S.G. He was sentenced to a term of one to two years in the Wyoming State Penitentiary. He acknowledged that he had a problem with molesting young girls.

The *uncontradicted* evidence also reflected that the children received poor grades in school when in custody of appellee, causing them to be held back a grade, whereas the grades improved considerably when the children were in the temporary custody of appellant. Such evidence further reflected that the children and their clothes were "filthy" when appellee delivered their temporary custody to appellant.

The *uncontradicted* evidence also indicated that appellant did not exhibit much interest in the children in the nature of telephone calls, presents, etc., subsequent to the time they left Germany with appellee.

The emphasis placed on all of this evidence at the trial was directed at the fault of the parties rather than its effect on the "welfare and best interests" of the children. For example, the trial court commented on appellant's failure to exhibit much interest in the children after they left Germany as a dereliction on his part. The "welfare and best interests" of the children

---

**4.** The plea was to an information charging violation of second degree sexual assault as defined in W.S. 6–2–303(a)(v) and W.S. 6–2–306(a)(ii). W.S. 6–2–303(a)(v) provides:

"(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

\* \* \* \* \* \*

"(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim[.]"

"Sexual intrusion" is defined as follows in W.S. 6–2–301:

"(a) As used in this article:

\* \* \* \* \* \*

"(vii) 'Sexual intrusion' means:

"(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or

"(B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission."

W.S. 6–2–306(a)(ii) provides the punishment for second degree sexual assault to be not more than 20 years.

could well have been served by this failure if contacts by appellant simply created arguments and tensions having adverse effects on the children. The receipt of the children by appellant from appellee in a "filthy" condition could have been caused by an isolated occurrence on that particular day.

The reason that S.G. did not confide in her mother with reference to the assault on her could bear on S.G.'s "welfare and best interests." The explanation given to the children for, and their understanding of, the immoral relationship between appellee and Patterson could bear on the children's "welfare and best interests." Evidence was received concerning appellee's contacts with Patterson subsequent to his arrest and to her allowing the children, other than S.G., to accompany Patterson when he was out on bond before sentencing. The more pertinent consideration concerning the "welfare and best interests of the children" would be appellee's propensity to associate intimately with others of a character similar to Patterson's.[5] These and like concerns could have been presented at the trial if the emphasis there had been on the "welfare and best interests" of the children.

At trial, the parties and the court referred to the rule relative to the "welfare and best interests" of the children, and the trial court made a ruling that such was served by placing custody in appellee.

Normally, the trial court's findings are presumed correct, and such findings will not be disturbed on appeal unless inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Wangler v. Federer*, 714 P.2d 1209 (Wyo.1986); *Broyles v. Broyles*, 711 P.2d 1119 (Wyo.1985); *Yost v. Harpel Oil Co.*, 674 P.2d 712 (Wyo.1983); *City of Rock Springs v. Police Protection Association*, 610 P.2d 975 (Wyo.1980). In considering the sufficiency of the evidence, this court assumes that the evidence in favor of the successful party is true, leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the successful party's evidence and gives the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it. *Broyles*, 711 P.2d at 1119; *City of Rock Springs*, 610 P.2d at 975.

In this case there was little conflict in the evidence. Since the only evidence favorable to appellee was appellant's failure to exhibit interest in the children when they were in appellee's custody, the finding that the "welfare and best interests" of the children were served by awarding custody to appellee was not sustained by the evidence and is contrary to the great weight of the evidence as the evidence now exists.

Therefore, the result reached by the trial court was not reasonable under the circumstances. There exists an abuse of discretion.

> " 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.' *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).
>
> "An abuse of discretion is that which shocks the conscience of the court and appears so unfair and inequitable that a reasonable person could not abide it. *Paul v. Paul*, Wyo., 616 P.2d 707 (1980)."

*Waldrop v. Weaver*, 702 P.2d 1291, 1293 (Wyo.1985).

Accordingly, I would reverse and remand this case for a new trial in which the procedural status of the parties is well defined, and in which the evidence concerning custody is directly related to the "welfare and best interests" of the children.

---

5. The trial court ruled that appellee's future association with Patterson would be a basis for further consideration of the custody statutes.

In any event, Patterson cannot inflict further harm on the children until he is released from confinement.